**Ella Mae CANNON, Plaintiff-Appellant,**

v.

**Patricia HARRIS, Secretary of Health, Education and Welfare, Defendant-Appellee.**

**No. 80–1957.**

United States Court of Appeals, Seventh Circuit.

Argued April 21, 1981.

Decided June 17, 1981.

---

Deborah Spector, Chicago, Ill., for plaintiff-appellant.

Steven J. Plotkin, Dept. of Health & Human Services, Chicago, Ill., for defendant-appellee.

Before SWYGERT, BAUER and CUDAHY, Circuit Judges.

PER CURIAM.

Plaintiff-appellant Ella Mae Cannon appeals from an order of the district court affirming the decision of the Secretary of Health, Education and Welfare which denied her applications for disability insurance benefits and Supplemental Security Income under Sections 216(i), 223, and 1601 *et seq.* of the Social Security Act, 42 U.S.C. §§ 416(i), 423, and 1381 *et seq.* She claims that the Secretary's decision is unsupported by substantial evidence in the record, that the Administrative Law Judge (ALJ) improperly applied the Administration's medical-vocational guidelines in determining that she was not disabled within the meaning of the Social Security Act, and that she was denied a full and fair hearing by virtue of the ALJ's failure to orally advise her of her right to legal representation at the hearing and by his failure to order a consultative psychiatric examination to determine the severity of any impairment she may have suffered from her history of chronic alcoholism.

We conclude that the ALJ erred in not inquiring into the present severity of plaintiff's chronic alcoholism and its possible effects upon her residual functional capacity. Accordingly, we reverse the judgment of the district court and remand for further proceedings.

I

Plaintiff is a fifty-one year old woman with eight years of formal education. She worked for twenty-one years as a "manager girl" at Vulcan Container Corporation, a job which consisted of picking up empty five-

gallon pails and placing them on an assembly line. Before her employment at Vulcan, she worked for three months as a presser at a cleaning establishment.

Plaintiff ceased working on December 20, 1977, because of abdominal pains. Shortly thereafter, she underwent surgery for a pancreatic pseudocyst. On May 11, 1978, she filed an application for disability insurance benefits, listing "surgery-pancreatic cysts" as her disability. Several months later, on October 4, 1978, she filed an application for Supplemental Security Income. Both applications were administratively denied initially and on reconsideration. Plaintiff then sought and was granted a hearing before an ALJ.

The ALJ considered various medical and vocational reports and plaintiff's own testimony in making his determination. The medical reports consist of the records from Northwestern Memorial Hospital, where plaintiff's surgery was performed, and reports from Dr. John Tekla, plaintiff's personal physician, and Dr. A. Behrooz Eshaghy, a consultative physician.

The hospital records show that plaintiff was admitted on April 23, 1978, complaining of abdominal pain. During her hospitalization an exploratory laparotomy was performed and a pancreatic pseudocyst was aspirated and irrigated. The surgery also revealed numerous adhesions of the pancreas which had to be lysed. The hospital records contain the following diagnoses: pseudo-pancreatic cyst, mild adult onset diabetes, chronic alcoholism, and mild essential hypertension. One of the reports noted that since December of 1977, plaintiff had discontinued her former habit of consuming a quart of rum and six beers daily and now drank only beer.

The reports by Dr. Tekla, plaintiff's treating physician, consist of the written summaries of two telephone calls made by him to the Administration. The first indicates that Dr. Tekla saw plaintiff on July 6, 1978, and found her blood pressure to be 150/100. He stated she was being treated medically for hypertension and noted she had no chest pains. He also noted she had diabetes with Grade II retinopathy,[1] but stated it was controlled with medication.

In the second report dated October 12, 1978, Dr. Tekla stated he had examined plaintiff on October 9, 1978, and found her hypertension "not very well controlled at this time." He stated she has no chest pains, but does have upper gastric pain. Dr. Tekla stated he had no recent lab work and did not know if there was any retinopathy present. He noted her recent hospitalization and indicated there were no complications other than repeated pain. He also stated that her diabetes was well controlled at this time.

The only other communication by Dr. Tekla was a handwritten notation on a page from a prescription pad which states that plaintiff "suffers from large pancreatic mass and is disabled for indefinite period of time." This note was dated May 9, 1978, approximately one month after plaintiff had undergone surgery for the removal of her pancreatic pseudocyst.

Dr. Eshaghy examined plaintiff in October, 1978, at the request of the Social Security Administration. He found plaintiff to be obese and noted atrophy in both her hands with decreased superficial sensation. Based on his examination and test results, Dr. Eshaghy diagnosed bilateral carpal tunnel syndrome,[2] a history of diabetes mellitus, a history of hypertension, and a postoperative status pancreatic cyst.

1. Diabetic Retinopathy refers to "a disease of the retina caused by diabetes. It is marked by the presence of tiny areas of hemorrhage due to the dilation of the capillaries." *Schmidt, Attorney's Dictionary of Medicine*, (1977) (hereafter *Schmidt*).

2. Carpal Tunnel Syndrome is defined as "a condition resulting from pressure on the median nerve as it traverses the carpal tunnel usually by fibers of the transverse carpal ligament. The condition is characterized by pain, tingling, burning, numbness, etc., in the areas supplied by the nerve, i. e., in the skin of the palm, fingers, wrist, etc. There may also be swelling of the fingers and atrophy of some of the muscles of the hand; especially those at the base of the thumb." *Schmidt*.

The record also contains a physical capacities evaluation of plaintiff, completed in November, 1978, by a consultative physician for the Illinois Disability Determination Service. The physician found plaintiff capable of sitting and walking six to eight hours a day, able to operate foot controls frequently, and able to climb stairs, reach above shoulder level, and bend or stoop occasionally. She was found capable of lifting ten to twenty pounds and using her hands to push, pull, and perform gross manipulations. The report cautioned against plaintiff's operating machinery in which the sense of touch is needed, however, because of her manual impairment.

Finally, the record contains a vocational assessment report by a specialist from the Illinois Division of Vocational Rehabilitation. The specialist concluded that while unable to perform her past work because of the amount of bending and reaching involved, plaintiff could perform other work which existed in the region in which she lived. The specialist cited several examples of light work activity which involved routine, non-machine, handling tasks that could be learned within thirty days.

The only testimony taken at the hearing was that of the plaintiff who appeared without counsel. Plaintiff testified that despite her abdominal surgery, she continued to experience pain in her abdominal region. She further testified that she was unable to grasp with her fingers and experienced numbness radiating down from her wrist. She testified to daily nausea, headache and pain, and stated she normally takes medication for high blood pressure, chest pains, diabetes and nerves, although she had not taken any medication recently because she ran out and was without money to buy more. She stated she was able to dress and feed herself, but her daughter does the housework and grocery shopping for her. Plaintiff testified she does not exercise because she's stiff and does little walking. She described her normal day as consisting primarily of watching television, and stated she was presently receiving $175 per month general assistance and $50 worth of food stamps.

Noting that one of the medical reports indicated that she had recently discontinued her former habit of consuming a quart of rum daily, the ALJ asked plaintiff if she was presently drinking that much rum. Plaintiff responded: "No, they asked me how much. I said whenever I drink, I get as much as I can. Whenever I drink it, I just drink as much as I can."

Based on the foregoing evidence, the ALJ found that plaintiff suffers from bilateral carpal tunnel syndrome, mild adult onset diabetes millitus, mild essential hypertension and chronic alcoholism. Although plaintiff was unable to perform her previous job, the ALJ concluded that she retained the residual functional capacity for light work as defined under sections 404.-1510(c) and 416.910(c) of Subparts P and I, Regulations No. 4 and 16, 20 C.F.R. §§ 404.1510(c) and 416.910(c) (1979). Applying the Administration's medical-vocational guidelines to a person of plaintiff's age, education and previous work experience, the ALJ concluded that she was not disabled within the meaning of the Act and that she was not entitled to the benefits sought.

The ALJ's decision was affirmed by the Appeals Council, making it the final decision of the Secretary, on August 17, 1979. Plaintiff at that point retained counsel and commenced this action for review of the Secretary's decision in the district court. She sought and was granted leave to proceed *in forma pauperis.*

On cross-motions for summary judgment, the district court affirmed the Secretary's Decision on May 30, 1980. This appeal followed.

## II

In concluding that plaintiff was not disabled within the meaning of the Act, the ALJ relied on the Administration's medical-vocational guidelines. These guidelines are used in conjunction with the Administration's 1979 regulations and were promulgated in an attempt "to consolidate and elaborate upon long standing medical-vocational

evaluation policies for adjudicating disability claims in which an individual's age, education, and work experience must be considered in addition to the medical condition." 43 Fed.Reg. 55.349 (1978).[3] The regulations established a "sequential evaluation" for the adjudication of disability claims in which a series of inquiries are made of the individual to determine whether his claim meets the standards set down in the Act. The procedure has been succinctly described as follows:

> The first inquiry under the sequence concerns whether a claimant is currently engaged in substantial gainful employment. If it is found that he is, the claim is denied without reference to the other steps in the sequence. If he is not, the second inquiry is whether the claimant has a "severe" impairment. If he does not, the claim is denied. If a severe impairment is present, the third inquiry is whether such impairment meets or equals one of the impairments listed under Appendix I to Subpart P of the Administrative Regulations No. 4. If it does, the claim is approved. If it does, the claim is approved. If it does not, the fourth inquiry is whether the claimant's impairments prevent him from performing his past relevant work. If he is found to be capable of returning to his past relevant work, the claim is denied. If he is not found to be so capable, the fifth and final inquiry is whether the claimant is able to perform other forms of substantial gainful activity, considering his age, education, and prior work experience. If he is not the claim is approved.

The medical-vocational guidelines, which are contained in Appendices 2, Subparts P and I, Parts 404 and 416, 20 C.F.R., are used in determining whether the claimant is disabled when and if the fifth step in the evaluation process is reached. To apply the guidelines, the ALJ must make findings of fact as to the claimant's vocational factors, *i. e.,* age, education, and work experience, as those terms are defined by the regulations, 20 C.F.R. §§ 404.1506–.1508, 416.906–.908, and his residual functional capacity, 20 C.F.R. §§ 404.1505, 416.905. "[W]hen the findings of fact made as to all factors coincide with the criteria of a rule, [contained in the guidelines], that rule directs a factual conclusion of disabled or not disabled." 20 C.F.R. §§ 404.1513, 416.913.

The regulations make clear, however, that the guidelines are not fully applicable in all cases in which the evaluation process reaches the fifth step. The guidelines are predicated on an individual's having an impairment which manifests itself by limitations in meeting the strength requirements of jobs, so-called exertional limitations. They do not take into consideration nonexertional limitations such as certain mental, sensory, or skin impairments. For this reason, where nonexertional limitations have been shown, either alone or in combination with exertional limitations, the guidelines cannot be used to direct a finding of not disabled. 20 C.F.R. Subpart P and I, Appendices 2, §§ 200.00(e). In such cases a finding of not disabled can be made only after further consideration of the claimant's nonexertional impairments in light of his unique vocational characteristics. *Id.*

It is in this respect that plaintiff claims the ALJ erred in denying her claim. She claims that the ALJ mechanically applied the medical-vocational guidelines to her claim without taking into consideration the nonexertional limitations caused by her chronic alcoholism and bilateral carpal tunnel syndrome. Although both conditions were found to exist, plaintiff contends that the ALJ failed to consider them at all in denying her claim. She argues that for this reason the case must be remanded to the Secretary so that her claim can be properly evaluated.

In reading the ALJ's decision, it does appear that the conclusion that plaintiff is not disabled was based entirely on an appli-

---

**3.** Since the Secretary's decision in this case, the regulations have been completely revised under "Operation Common Sense" and in accordance with Executive Order 12044. The goal of the revision was to reorganize and rewrite the rules in simpler, briefer language. The analysis under the new regulations appears essentially unchanged. 45 Fed.Reg. 55566 (1980).

cation of the medical-vocational guidelines. In part the decision reads:

> The evidence shows the claimant is 49 years old (which is defined as a "younger individual" by regulations 404.1506(b) and 416.906(b), has "limited education" as defined by regulations 404.1507(d) and 416.907(b) and has done unskilled work. The evidence further supports a finding that she has the maximum sustained work capacity to perform light work. Accordingly, Rule 202.18, Table No. 2, of Appendix 2, Subparts P and I, Regulations No. 4 and 16 are applicable. Since regulations 404.1513 and 416.913 provide that when the findings of fact made as to all factors coincide exactly with the criteria of a rule, that rule *directs* a conclusion of "disabled" or "not disabled" as specified in the rule. Hence, the claimant must be found "not disabled." [4]

Notwithstanding this seemingly total reliance upon the medical-vocational guidelines, however, it can be argued that the ALJ did consider plaintiff's sensory impairment associated with her bilateral carpal tunnel syndrome in concluding that she was not disabled. The report by Dr. Eshaghy diagnosed that condition and expressly noted the atrophy and sensory deficit which accompanied it. At the hearing, the ALJ took notice of an apparent deformity of plaintiff's right hand and questioned her about her ability to use her hands for grasping things and feeling. Although plaintiff testified that her hands felt numb and she was unable to grasp anything, a physical capacities evaluation concluded that she could perform gross manipulations involving simple grasping with both hands. A vocational assessment specialist concluded from this evaluation that plaintiff could perform any of several jobs which required light work activity with routine handling tasks but no fine manipulations. Among the jobs listed by the specialist were floor stock person, hand and machine paster, and bottom painter, each of which exists in significant numbers in the national economy.

In addition to applying the medical-vocational guidelines, the ALJ specifically found, based on this evidence, that plaintiff could perform these jobs and was therefore not disabled within the meaning of the Act. Thus, despite his conclusion that Rule 202.-18 of the guidelines "directs" a finding of "not disabled," the ALJ does seem to have considered also plaintiff's sensory impairment associated with bilateral carpal tunnel syndrome and specifically concluded that it would not prevent her from engaging in certain light work activities.

The same cannot be said, however, with respect to plaintiff's chronic alcoholism. Other than the mere mentioning of it as one of plaintiff's several diagnoses, the ALJ made no findings with respect to its severity or its effect on plaintiff's residual functional capacity. It appears from one of the hospital reports that plaintiff's pancreatic disorder was a consequence of her chronic alcoholism, but there is no indication of whether the condition is now under control or whether it has resulted in any other nonexertional impairments, such as a loss of mental capacity. *See King v. Califano,* 599 F.2d 597 (4th Cir. 1979).

■ By itself, the mere finding that an individual suffers from alcoholism is insufficient to support a finding of disability. The regulations expressly provide:

> (d) The presence of a condition diagnosed or defined as addiction to alcohol or drugs will not, by itself, be the basis for a finding that an individual is or is not under a disability. As with any other condition, the determination as to disability in such instances shall be based on symptoms, signs, and laboratory findings.

20 C.F.R. §§ 404.1517(d), 416.917(e).

■ If a claimant's addictive dependence on alcohol is sufficiently severe to bring it under the listing for that impairment in Appendix 1 to Subpart P, medical considerations alone, without regard to vocational factors, may justify a finding that he is

---

4. The Appeals Council pointed out on review of the ALJ's decision that, based on his findings, Rule 202.17 of Table 2, not Rule 202.18, was applicable. Since Rule 202.17 also directed a finding of not disabled, however, the ALJ's error was harmless.

disabled. 20 C.F.R. §§ 404.1504(a)(2), 416.-904(a)(2), Subparts P and I, Appendix 1, Section 12.04. But even where the condition is not so severe as to support a finding of disability by itself, it must still be considered, if it is severe at all, in light of the claimant's vocational factors and whatever other impairments he may have in order for a final determination to be made.

In this case the Secretary contends that the ALJ was not required to consider plaintiff's alcoholism because plaintiff failed to produce any evidence that it was severe or could be disabling and in fact did not even claim alcoholism as a cause of her disability. Since plaintiff failed to produce any evidence of the severity of her alcoholism, the Secretary argues that the ALJ was justified in applying the medical-vocational guidelines and implicitly rejecting the existence of any nonexertional impairments in his analysis.

■ While the ALJ's failure to inquire into the severity of plaintiff's alcoholism and its possible effects upon her residual functional capacity is perhaps understandable under the circumstances, it cannot be allowed to stand. It is firmly established that hearings to determine whether claimants are entitled to disability insurance benefits are not adversary proceedings. *Richardson v. Perales*, 402 U.S. 389, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971). The ALJ has a basic obligation at such hearings to develop a full and fair record. *Smith v. HEW*, 587 F.2d 857, 860 (7th Cir. 1978); 20 C.F.R. § 404.927. Especially where the claimant is unassisted by counsel, the ALJ has a duty to "scrupulously and conscientiously probe into, inquire of, and explore for all relevant facts...." *Gold v. HEW*, 463 F.2d 38, 43 (4th Cir. 1972); *Smith v. HEW, supra*. His failure to do so has been consistently held to constitute good cause sufficient to remand to the Secretary under 42 U.S.C. § 405(g) for the taking of additional evidence. *Sims v. Harris*, 631 F.2d 26 (4th Cir. 1980); *Livingston v. Califano*, 614 F.2d 342 (3d Cir. 1980); *Hankerson v. Harris*, 636 F.2d 893 (2d Cir. 1980); *King v. Califano, supra. See also Schmoll v. Harris*, 636 F.2d 1146 (7th

Cir. 1980), where this court reversed the Secretary's denial of disability benefits as unsupported by substantial evidence because the ALJ had failed to resolve the question of the claimant's Librium use on her ability to engage in substantial gainful activity.

■ Although it is true that plaintiff did not specifically list alcoholism as a cause of her claimed disability in her application for benefits, this fact is of little import. "A technical application of the rules of pleading is inappropriate to the informal proceedings provided in disability determinations." *King v. Califano, supra*, at 599. Furthermore, the Administration's own regulations provide that an assessment of residual functional capacity is required not only with respect to those physical or mental capacities that are in doubt by reason of the claimant's allegations, but also those as to which doubt arises by reason of the evidence adduced. 20 C.F.R. §§ 404.1505(e), 416.905(e). Although the evidence in the instant case relating to plaintiff's alcoholism was clearly insufficient to support a finding of disability, it was sufficient to raise an issue as to plaintiff's mental and psychological capacity to engage in substantial gainful activity.

■ Under these circumstances, the ALJ should have inquired into the present status and possible effects of plaintiff's chronic alcoholism. The impact of chronic alcoholism and its effects upon disability determinations, although not recently passed upon in this circuit, has been clearly recognized in other circuits. It has been generally recognized that "chronic alcoholism, alone or in combination with other causes, may constitute a disability such as would make gainful employment impossible." *King v. Califano, supra*, 599 F.2d at 599; *Adams v. Weinberger*, 548 F.2d 239 (8th Cir. 1977). *See generally* Annot., 39 A.L.R.Fed. 182 (1978). "Where there is evidence of alcohol abuse, the Secretary must inquire whether the claimant is addicted to alcohol and, as a consequence, has lost the ability to control its use." *Hicks v. Califano*, 600 F.2d 1048, 1051 (4th Cir. 1979). Because the ALJ did not do so here, the case must be remanded.

The judgment of the district court is reversed and the cause is remanded with directions to the district court to remand to the Secretary of Health, Education and Welfare for further proceedings in accordance with this opinion.