**Ray L. SMITH, Plaintiff-Appellant,**

v.

**Richard S. SCHWEIKER, Secretary of Health and Human Services, Defendant-Appellee.**

No. 82–3062.

United States Court of Appeals, Seventh Circuit.

Argued June 6, 1983.

Decided May 18, 1984.

**268**

Jeanne Sathre, Carr, Korein, Kunin, Schlichter & Brennan, East St. Louis, Ill., for plaintiff-appellant.

Robert L. Simpkins, Asst. U.S. Atty., Frederick J. Hess, U.S. Atty., East St. Louis, Ill., for defendant-appellee.

Before BAUER and FLAUM, Circuit Judges, and FAIRCHILD, Senior Circuit Judge.

FAIRCHILD, Senior Circuit Judge.

This is an appeal from a district court judgment affirming a decision by the Secretary that claimant Ray Smith had ceased to be entitled to Social Security disability insurance benefits.

### I.

On December 13, 1976, Smith fell and was hit by a rail car while working as a switchman in the Granite City Steel Works in Granite City, Illinois. Smith suffered a broken neck, a fracture and dislocation of the back, a broken clavicle, a collapsed lung, and multiple cuts and burns. He later developed a bleeding gastric stress ulcer and seizures.

Smith applied for and received disability insurance benefits from the date of his injury. In June 1980, the Social Security Administration (SSA) notified Smith of its determination that he had become able to do substantial gainful work in June 1979, and his entitlement to disability insurance benefits had ended in August 1979.[1] Smith requested a hearing.

At the time of the hearing, June 25, 1981, Smith was 24 years old and had completed high school. Prior to his accident, he had been a physical laborer working among other jobs as a switchman and stock boy.

The medical evidence presented to the Administrative Law Judge (ALJ) established that Smith's spinal injury resulted in partial paralysis of the arms and legs. Smith has made a good partial recovery but continues to show neuromuscular limitations of the wrists, hands, legs, and feet. He has only trace response of the ulnar wrist flexors and extensors and marked weakness in the small hand muscles. Weakness is especially pronounced in the right hand. Smith has limited ability to extend his fingers or manipulate his thumb. In the legs, Smith exhibits restricted motion of the hips; he also suffers from spasms in his ankles. Smith has some general spasticity in the hands and feet, and some nerve damage. He has recovered enough from his injuries to walk without a cane though he requires bilateral ankle braces.

In the summer of 1978, Smith was examined by Dr. Ronald Hertel, a board certified orthopedic surgeon. Dr. Hertel's report noted atrophy of the musculature of both hands, and an absence of wrist and finger extensors. He also observed a nonunion of

---

1. Smith was originally informed that he was required to return the nine months of benefits paid after August 1979. The ALJ waived repayment of these benefits after determining that Smith was not at fault and recovery would deprive Smith of ordinary and necessary living expenses.

the right clavicle where the fracture occurred, but ruled treatment for that condition unnecessary.

Dr. Hertel. felt that Smith's condition would permit his return to a light form of work. In November 1978, Dr. Franz Steinberg, the claimant's principal treating physician following his accident, and Dr. Lawrence Harmon both stated that Smith was a good candidate for vocational rehabilitation.

In 1979, Dr. Steinberg summarized Smith's condition for the Illinois Disability Determination Services. Dr. Steinberg indicated Smith continued to exhibit a moderate impairment of the hands, particularly the right hand, and of the wrists, as well as decreased sensation in those areas, though he had learned to compensate for these limitations. The doctor noted that Smith's walk still exhibited some "pelvic instability," and that he had a tendency to hyperextend the right knee. Smith could stand on his toes but was unable to stand on his heels or right leg. The doctor also noted that Smith suffered from chronic, fairly severe lower back pain, and had limited motion in that portion of his back. Dr. Steinberg concluded that Smith would be able to return to sedentary work if it did not involve any climbing or operation of foot controls nor a great deal of walking, bending, or stooping. The doctor stated that Smith was limited in use of his hands, though in a subsequent phone inquiry Dr. Steinberg indicated Smith's left hand was normal and his right hand could perform most fine and gross manipulations.

In a letter dated April 24, 1980, Dr. John Calvert, Medical Director for Granite City Steel, informed the Illinois Bureau of Disability Adjudication Services that the company had no jobs that Smith was capable of filling. Dr. Calvert concluded that even office jobs were inappropriate for Smith because "[t]he findings present in his right hand do not allow him to do any typing."

Smith was also examined in the summer of 1981 by a neurologist, Dr. Richard Sohn, who stated that the claimant's injuries make gainful employment "almost impossible." Dr. Sohn observed that impairment of the hands prevent Smith from easily handling paper, pencils, or hand controls and that spasticity in his legs make difficult repetitive movement of foot controls. Dr. Sohn concluded that Smith could only perform "work that required him to use his mind and dictate."

Smith testified before the ALJ that he had only 50 percent of a normal grip in his hands. He also stated that hand manipulations are generally difficult for him. He is able to straighten his index fingers sufficiently to do two-finger typing but any sustained writing or typing will cause his hands to cramp severely. Smith did say that he was able to drive a car. Smith testified that he is weak and unsure on his feet. In addition, he testified that he suffers from back and neck pain aggravated by prolonged sitting. On such occasions, Smith stated he must lie down to relieve the pain.

Smith further testified that his body has trouble adjusting to changes in temperature, causing muscle spasms and inducing seizures. The seizures are controlled somewhat by medication prescribed by Dr. Sohn.

Smith stated that exhaustion and pain would prevent his performing any job as a daily routine.

The ALJ found that Smith has a severe impairment which prevents his former work, but "does not preclude work of a sedentary nature"; that Smith's "pain is not so severe as to preclude sedentary work"; and that Smith's so-called "non-exertional neurological impairments and seizure disorder would not preclude sedentary work." He clearly implied a finding that Smith has the capacity to perform sustained sedentary work within the meaning of Section 201.00 of the Medical-Vocational Guidelines. See 20 C.F.R. pt. 404, subpt. P, app. 2, § 201.00 (1983). Relying on that finding, he decided that in view of Smith's age, education, and work experience, Rule 201.27 of the Guidelines required a decision of "Not Disabled." See Appendix 2, Table No. 1, Rule 201.27.

The ALJ nowhere indicated how close Smith comes to possessing the capacity for sustained performance of a full range of sedentary work. It is clear, moreover, that Smith is not capable of performing a full range of such work. The issue here is whether the evidence supports putting Smith on the "grid" as having the residual functional capacity required for Table No. 1 to apply.

## II.

As previously noted by this court, the determination of a disability under SSA's regulations involves a sequential evaluation. *See Garfield v. Schweiker*, 732 F.2d 605 at 607 n. 2 (7th Cir.1984); *Wallschlaeger v. Schweiker*, 705 F.2d 191, 196 (7th Cir.1983); *Cannon v. Harris*, 651 F.2d 513, 517 (7th Cir.1981). The ALJ found that Smith cleared all the initial hurdles including proof that a severe impairment had left him unable to perform past work. The burden then shifted to the agency to show the claimant retained the residual functional capacity to perform other work existing in the national economy. *Wallace v. Secretary of Health and Human Services*, 722 F.2d 1150, 1153 (3rd Cir.1983); *Streissel v. Schweiker*, 717 F.2d 1231, 1232 (8th Cir. 1983); *Van Horn v. Heckler*, 717 F.2d 1196, 1198 (8th Cir.1983).

Since 1978 the Secretary has sought to meet this burden by relying in part on its Medical-Vocational Guidelines. *See* 20 C.F.R. pt. 404, subpt. P, app. 2 (1983). The Appendix 2 Guidelines indicate in grid form whether a significant number of jobs exist in the national economy for individuals with various impairments of physical capacity, ages, education, and work experience. *See Heckler v. Campbell*, 461 U.S. 458, 103 S.Ct. 1952, 1954–55, 76 L.Ed.2d 66 (1983). Where an individual's characteristics correspond to factors on the grid, the Guidelines direct a finding of disabled or not disabled.

The Guideline rules do not encompass the characteristics of every conceivable claimant but rather describe what the agency has determined to be major vocational and functional patterns. *See* 20 C.F.R. § 404.-1569 (1983). The Guidelines only apply when the claimant's vocational factors and residual functional capacity correspond with the criteria of a specific rule. *Id.;* Appendix 2, § 200.00(d). *See Campbell*, 461 U.S. 458 at —— n. 5, 103 S.Ct. at 1955 n. 5 ("the rules will be applied only when they describe a claimant's abilities and limitations accurately"). *See also Kail v. Heckler*, 722 F.2d 1496, 1498 (9th Cir.1984); *Cannon*, 651 F.2d at 517.

Smith's principal contention on appeal is that the Guidelines were improperly applied by the Secretary in this case given his unique physical limitations. The question for this court on review is whether substantial evidence in the record as a whole supports application of the Guidelines to Smith's claim of disability. *See Strunk v. Heckler*, 732 F.2d 1357 at 1359 (7th Cir. 1984) (applying substantial evidence standard for review of Secretary's denial of disability benefits under Social Security Act).

In denying benefits to Smith, the ALJ relied upon Rule 201.27 which directs a finding of "not disabled" for an 18 to 44 year old, unskilled high school graduate capable of performing a range of "sedentary" work. It is undisputed that Smith satisfies the age, skill, and education requirements of Rule 201.27. The present dispute is concerned with whether Smith retained the functional capacity to perform the range of sedentary work contemplated by the Guidelines.

Sedentary work is defined by the Guidelines in terms of the strength requirements of the job, described in the regulations as physical exertion or exertional requirements. "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties." 20 C.F.R. § 404.-1567(a) (1983).

Even if a claimant has the residual functional capacity to meet the exertional requirements for sedentary work, the regulations acknowledge that "non-exertional" limitations—such as "mental, sensory, or skin impairments" or "postural and manipulative impairments or environmental restrictions"—may make application of the Guidelines improper. *See* Appendix 2 § 200.00(e). *See also Cannon*, 651 F.2d at 517.

■ Application of a Vocational-Guideline Rule will be inappropriate if the evidence does not support a finding that the claimant is capable of performing the express physical exertion requirements for that type of work or because some other non-exertional impairment significantly diminishes the claimant's ability to do that work or because of a combination of both factors. See Appendix 2 § 200.00(e)(2).

There is conflicting evidence in this record concerning Smith's capacity to meet the physical exertion requirements for sedentary work. Smith testified that he would be unable to sit or stand or walk for the periods contemplated by definition of sedentary work under the Guidelines without experiencing debilitating pain. The medical evidence indicates that claimant's exhaustion and pain are very real, as are his limitations in posture and mobility. At the same time, Dr. Steinberg did opine that Smith was able to meet the physical exertion requirements for sedentary work, and other doctors believed him capable of returning to some form of work. The ALJ relied upon this latter evidence in finding Smith capable of the strength requirements for sedentary work.

The record evidence presents far less inconsistencies concerning Smith's non-exertional neuromuscular limitations. Both claimant's testimony and the medical evidence show that neuromuscular deficiencies prevent Smith from operating foot controls. The evidence also indicates Smith is able to do only two-finger typing and then for only a short time. Both Doctors Cal-

vert and Sohn felt the claimant would be unable to perform any job requiring typing. Smith's testimony that sustained writing causes his hands to cramp is undisputed. Finally, while some dispute exists over claimant's ability to use his hands generally, it is clear from the record that many simple hand manipulations are difficult, particularly movements requiring bilateral dexterity.[2]

Regarding Smith's non-exertional limitations the law judge wrote:

> The Administrative Law Judge has considered the non-exertional impairments due to his seizure disorders as well as the limitation in the use of his hands but cannot find that these conditions are so severe as to preclude sedentary work activities for jobs requiring only gross manipulation of the hands which would be no more difficult than operating a motor vehicle. Certain fine finger dexterity movements would be precluded, but the claimant retains the capacity for sedentary jobs.

This finding may be supportable by the record but it fails to comprehend that the question is not only whether non-exertional impairments would permit a claimant to perform some sedentary jobs but rather "a full range of sedentary work." *See* Appendix 2 § 201.00(h).

The purpose of the Guidelines is to facilitate establishing that there are a substantial number of jobs in the economy which a person with the impaired capacity (and other characteristics) can perform. It seems obvious that the smaller the range of sedentary jobs a person is physically able to perform, the less valid the proposition that the Guidelines reflect a substantial number of jobs the person can perform.

Section 201.00(a) explains that most sedentary occupations fall within the professional, administrative, technical, clerical, and benchwork classifications. Approximately 85 percent of unskilled sedentary

---

**2.** The record also makes plain that Smith is unable to do any climbing, nor, because of restrictions in his range of motion, much bend-

ing or stooping. Evidence of Smith's pain and seizures were discounted by the ALJ.

occupations are in the machine trades and benchwork categories. *See* Appendix 2, § 201.00(a).

■ From review of the record it is apparent that limitations in Smith's hands and feet, which prevent his operating foot controls, typing, writing for a substantial period, and impede both bilateral and fine hand manipulations, would preclude his performing many of these jobs, as well as many of the remaining jobs falling in the clerical category. The uncontradicted evidence of these non-exertional neuromuscular limitations makes improper the law judge's reliance on the Medical-Vocational Guidelines to determine Smith's claim. *See, e.g., Gordon v. Schweiker*, 725 F.2d 231, 236–37 (4th Cir.1984) (Guidelines not fully applicable where claimant suffers from poor eyesight); *Kail v. Heckler*, 722 F.2d 1496, 1498 (9th Cir.1984) (Guidelines not applicable where claimant unable to tolerate dust or fumes); *Haynes v. Heckler*, 716 F.2d 483, 485 (8th Cir.1983) (Guidelines not applicable where claimant suffers colon discomfort and recurrent episodes of diarrhea).

■ Appendix 2 offers the following example, closely paralleling the present facts, to illustrate the limitations of the Guidelines.

An individual under age 45 with a high school education can no longer do past work and is restricted to unskilled sedentary jobs because of a severe medically determinable cardiovascular impairment (which does not meet or equal the listings in Appendix 1). A permanent injury of the right hand limits the individual to sedentary jobs which do not require bilateral manual dexterity. None of the rules in Appendix 2 are applicable to this particular set of facts, because this individual cannot perform the full range of work defined as sedentary. Since the inability to perform jobs requiring bilateral manual dexterity significantly compromises the only range of work for which the individual is otherwise qualified (i.e., sedentary), a finding of disabled would be appropriate.

Appendix 2 § 201.00(h). We see no basis for distinguishing the present claim from the example used in the Guidelines. Indeed, Smith's neuromuscular limitations are far in excess of those the agency's own example suggests render the Guidelines inapplicable.[3]

The judgment of the district court affirming denial of disability benefits is accordingly reversed and the cause remanded with directions to set aside the administrative decision and remand for further proceedings consistent with this opinion.[4]

REVERSED and REMANDED.

---

3. We emphasize that it is the undisputed *severity* of Smith's non-exertional limitations which prompts us to hold the Guidelines inapplicable. Where the evidence supports it, an ALJ is permitted to conclude that a non-exertional limitation, while present, has no significant impact on a claimant's capacity to perform the range of work the individual is otherwise exertionally capable of performing, and that the Guidelines therefore apply. *See, e.g., Cummins v. Schweiker*, 670 F.2d 81, 84 (7th Cir.1982) (upholding ALJ's finding that blindness in one eye would not interfere with claimant's ability to perform sedentary work).

4. A finding that the Guidelines are inapplicable to claimant's case is not determinative of the merits of the claim. "If an individual's specific profile is not listed within ... Appendix 2, a conclusion of disabled or not disabled is not directed." Rule 200.00(d). While a finding of disabled would be appropriate, *see* Rule 201.-00(h), additional evidence may be taken on the question of whether work exists in the national economy for an individual with claimant's limitations. *See Cannon*, 651 F.2d at 518.

Nor does our ruling that the Guidelines are not determinative of Smith's claim preclude use of the Guidelines as "guidance for decisionmaking." *See* 200.00(d). In *Cannon*, this circuit found an ALJ's use of the Guidelines troublesome where claimant's sensory impairments precluded her performing work requiring fine hand manipulations. But in that case we upheld their supplemental use where independent testimony was taken from a vocational assessment specialist that various jobs existed in the national economy for an individual with that claimant's special limitations. 651 F.2d 518.