**Frank SCHWEITZER, Plaintiff,**

v.

**Margaret HECKLER, Secretary of Health and Human Services, Defendant.**

**Civ. A. No. 83–C–1684.**

United States District Court, E.D. Wisconsin.

July 2, 1985.

Luanne M. Henk, Clintonville, Wis., for plaintiff.

Joseph P. Stadtmueller, U.S. Atty. by Melvin K. Washington, Asst. U.S. Atty., Milwaukee, Wis., and Donna Morros Weinstein, Dept. of Health & Social Services, Chicago, Ill., for defendant.

## DECISION AND ORDER

REYNOLDS, Chief Judge.

This matter is before the Court on plaintiff's request for review of a final decision of the defendant Secretary of Health and Human Services ("the Secretary") denying his application for a period of disability and disability insurance benefits. Federal jurisdiction is based on 28 U.S.C. § 1331 and 42 U.S.C. § 405(g). The action was referred to a United States Magistrate, who recommended that the Secretary's decision be affirmed. Plaintiff has filed timely objections to the recommendation. I conclude that the case must be remanded to the Secretary for further proceedings.

Plaintiff filed his application for disability insurance benefits on December 8, 1981, stating that he became disabled after suffering a heart attack. The Secretary denied the application initially and on reconsideration. A hearing was held before an administrative law judge ("ALJ") on October 21, 1982, at which plaintiff was represented by counsel. Plaintiff and a vocational expert gave testimony. The ALJ issued his decision denying plaintiff's application on April 26, 1983.

The record discloses that plaintiff was forty-six years old at the time of the hearing. He has a seventh-grade education and has received no vocational or specialized training. His past work was as a farmer and a truck driver, and his last place of employment was with a construction company, where he drove a gravel truck and lifted sacks of cement. He presently lives on a farm with his wife and six of his seven children. He supervises the operation of his farm, although his children do the physical labor and his wife performs the bookkeeping.

On May 19, 1981, plaintiff suffered a heart attack while driving a truck, and was taken to a local hospital and then to a hospital in Appleton, Wisconsin. He was diagnosed as having arteriosclerotic heart disease with an acute inferior and lateral wall myocardial infarction, complicated by second and third degree arterial ventricular block. There was substantial arterial blockage, including complete obstruction of the coronary artery. On May 21, 1981, a temporary pacemaker was inserted in plaintiff's chest. On August 4, 1981, he underwent a treadmill test, the results of which were consistent with the earlier diagnosis.

Plaintiff was examined by his primary physician, a Dr. George Nichols, and two other doctors, Drs. Lowell Peterson and Robert Koberstein. All three physicians opine that plaintiff is incapable of returning to his former job. Reports of examinations by Dr. Nichols in the months following the heart attack indicate that plaintiff complained of difficulty coping with heat and direct sunlight, insomnia, occasional dizzy spells, and the sensation of a "bobber" in his throat that impeded his respiration. Dr. Nichols's notes of a 1982 examination show that plaintiff complained of dizzy spells when he tried to lift things and an occasional little "pin-sticking" sensation. Notes of a September, 1982 examination reflect that plaintiff complained of a dizzy spell while gardening, numbness in his legs at night and insomnia, a sensation of having a "bobber" in his throat and intermittent sore spots in his chest. Notes of an October 12, 1982 examination show that plaintiff was aware of Dr. Nichols' opinion that his symptoms were mental but still felt occasional tiredness and needle-jabs, and restlessness in his legs. Dr. Nichols also noted that on October 14, 1982, plaintiff's wife telephoned him to say that plaintiff had jumped out of bed in the night with a cramp in his leg and became dizzy and fell. Notes of an October 28, 1982 examination show that plaintiff complained of numbness in his left arm.

Following right and left heart catheterization and coronary arteriography in July, 1981, Dr. Peterson conducted electrocardiogram treadmill tests on plaintiff. A report

dated July 23, 1981 showed that plaintiff experienced no chest pain during the treadmill exercise, and maintained a normal heart rate during the exercise with a normal slowing rate thereafter, but showed some residual effects of the infarction. The report of a treadmill test conducted August 4, 1981 contains similar results. In a letter to Dr. Nichols dated November 30, 1981, Dr. Peterson described a reevaluation examination of plaintiff. Plaintiff had told Dr. Peterson that when he did farm work, which required some heavy lifting, he experienced palpitations in his throat that made him somewhat short of breath. Plaintiff also noted to Dr. Peterson some problems with heat intolerance and nervousness, but mentioned no chest pain, palpitations or shortness of breath in this respect. Plaintiff's pulse was regular and no murmurs were detected. Dr. Peterson recommended that plaintiff not return to heavy work, such as his truck driving job, that he apply for social security benefits and that he be given treadmill electrocardiogram exercise once every six to twelve months.

The April 29, 1982 report of Dr. Koberstein reflects the result of an electrocardiogram exercise undertaken on that date. The report notes that the test was stopped because of some premature ventricular contraction and plaintiff's complaints of lightheadedness. He did not complain of chest pain or shortness of breath. Dr. Koberstein concluded that plaintiff displayed a low exercise tolerance for a man his age. In an April 23, 1982 letter to the Bureau of Social Security Disability Insurance, pursuant to whose direction Dr. Koberstein had examined plaintiff, Dr. Koberstein wrote that plaintiff had complained of chest pains associated with severe exertion, such as walking more than one mile, or with exposure to extreme cold, heat or humidity. The chest pains could be relieved by rest or nitroglycerine. Dr. Koberstein opined that plaintiff was capable of light work and walking distances under one mile. He recommended that plaintiff not return to his past work as a truck driver.

At the hearing, plaintiff testified that he no longer did physical work on his farm, but had turned that responsibility over to his sons. He testified that the farm operations were not profitable, and that his family had to continue borrowing to pay bills. He also stated that some of the family's income was in the form of social security benefits to his daughter, who is mentally retarded.

He further testified that he presently has high blood pressure and has been advised by his doctor to get a check-up on a weekly basis, although he is not taking any medication for this. He testified that he had recurrent chest pain, which he described as a "spearing with a pin" sensation followed by general discomfort. He stated that the pain was controllable by nitroglycerin, although the nitroglycerin gave him severe headaches. He testified that he suffered from insomnia up to three nights per week, and had experienced four or five dizzy spells in the past month. He testified to having numbness in his legs while he was inactive, and could sit for approximately ten minutes before his legs began to bother him. Further, he testified that he had difficulty climbing stairs, and expressed doubt about being able to work in conditions where there would be dust, heat, and fumes from gasoline. He described his activities as watching television, going for walks, and driving around the block or to the grocery store with his wife. He stated that he tried gardening, but began to feel faint when trying to operate a tiller. He said that he socialized very seldom.

The vocational expert who testified at the hearing, Dr. Laurine Fitzgerald, noted plaintiff's functional illiteracy, and also a recalcitrant verbal pattern and problems with memory. She said that these factors, considered in conjunction with plaintiff's attested dizzy spells and leg discomfort, and the possibility that surgery might be necessary in the future, made "the employment return bleak." Tr. at 72. She stated that there were jobs available within a tristate area that plaintiff could perform, but only a very few. She mentioned visual scanning work in packing and food processing plants, and capping or bottling work as

possibilities. She opined that the work environment would have to be free of dust and fumes and not be subject to changes in temperature.

The ALJ concluded that plaintiff had retained a capacity for light work. The ALJ assumed that plaintiff was functionally illiterate, and applied the grid in the vocational guidelines at 20 C.F.R. Part 404, Subpart P, Appendix 2, which directs a finding of nondisability for persons of plaintiff's characteristics. The ALJ stated his view that some of plaintiff's symptoms were caused by anxiety, and that there were no indications of impaired thought process or inability to follow instructions or cooperate with coworkers that would render plaintiff unable to perform unskilled entry-level work activity. He also found that the documentary evidence, testimony and his observation did not indicate the presence of disabling pain. Therefore, he concluded that plaintiff was not entitled to a period of disability or disability benefits.

The Magistrate determined that this conclusion was supported by substantial evidence. He observed that none of the doctors nor the vocational expert had ruled out plaintiff's capacity for light work, and that the expert and one of the doctors had recognized that plaintiff could perform some light work. The Magistrate also observed that for the ALJ to discredit plaintiff's testimony on his spear-like pains in his chest was within the ALJ's authority, in view of conflicting documentary medical evidence from examining physicians.

Plaintiff has objected to the Magistrate's recommendation. He argues that the Secretary's decision is not supported by substantial evidence, and cites certain evidence favoring his claim. Specifically, he cites the July 23, 1981 tread mill test results, in which it was noted that the test had to be stopped due to shortness of breath and leg fatigue; the report of Dr. Peterson on his November 22, 1981 examination of plaintiff wherein plaintiff's complaints of throat palpitations and inability to tolerate heat were noted; Dr. Koberstein's conclusion in his April 23, 1982 letter to the Bureau of Social Security Disability Insurance that plaintiff experienced chest soreness and that exposure to cold, heat or humidity would cause chest discomfort; the examination notes of Dr. Nichols from 1982; and the statements of Drs. Peterson and Nichols that plaintiff is disabled.

■ Under 28 U.S.C. § 636(b)(1)(B), the Court is required to undertake a *de novo* determination of the portions of the Magistrate's recommendation to which objections have been made. The plaintiff argues that the decision of the Secretary and the ALJ's finding that plaintiff's pain is not disabling are not supported by substantial evidence. The Court construes this as an objection to the Magistrate's overall conclusion that the findings and decision of the ALJ were supported by substantial evidence. Therefore the ALJ's decision will be reviewed *de novo* under the "substantial evidence" standard.

■ Claims for disability benefits are administratively reviewed pursuant to a five-part sequential inquiry established in the Social Security regulations. *See* 20 C.F.R. § 404.1520 (1984). Specifically, the ALJ must inquire: 1) whether the claimant is presently unemployed; 2) whether the claimant's impairment is "severe;" 3) whether the impairment meets or exceeds one of a list of specific impairments; 4) whether the claimant is unable to perform his or her former occupation; and 5) whether the claimant is unable to perform any other work within the economy. An affirmative answer leads either to the next step or, on steps 3 and 5, to a finding that the claimant is disabled. A negative answer at any point, other than step three, stops the inquiry and leads to a determination that the claimant is not disabled. *Zalewski v. Heckler,* 760 F.2d 160, 162 n. 2 (7th Cir.1985). Judicial review of the decision is limited to a determination of whether the findings are supported by substantial evidence and whether the correct legal standards have been applied. *Halvorsen v. Heckler,* 743 F.2d 1221, 1225 (7th Cir.1984). "Substantial evidence" is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Rich-*

ardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971). There must be more than a mere scintilla of evidence to support the decision, but if there is, the court may not substitute its judgment for that of the ALJ, even though the court might have reached a contrary result if it had taken the evidence in the first instance.

There is no dispute that plaintiff is presently unemployed, and that he is unable to return to his former work as a farmer and a gravel truck driver for a construction company. The decisive step in the ALJ's inquiry was the fifth, that is, the determination of whether the plaintiff was unable to perform any other work within the economy. In this context, the ALJ found that plaintiff retained the residual functional capacity to perform light work, and applied the grid appearing at 20 C.F.R. Part 404, Subpart P, Appendix 2 to conclude that plaintiff was not disabled.

■ There is substantial evidence supporting the conclusion that plaintiff can perform light work as defined in 20 C.F.R. § 404.1567(d). None of the examining physicians has ruled out this possibility, and Dr. Koberstein explicitly suggested that plaintiff was capable of light work. The vocational expert testified that the examining physicians did not particularize their assessment of plaintiff's ability in terms of poundage he could lift, length of time he could stand or sit, or ability to stoop, reach, bend or twist. Yet she did concede that plaintiff could cope with a sedentary or a light job where he could focus his attention on something finite.

The ALJ considered the plaintiff's residual capacity to perform light work, his age and his lack of vocational training, and assumed that he was functionally illiterate in applying the medical vocational grid. He found that plaintiff came within Rule 202.16 of Table 2, which directs a finding of not disabled.

■ However, the grid is not to be used for directing a finding if a claimant's nonexertional limitations prevent him from performing the full range of jobs within his exertional level. Smith v. Schweiker, 735 F.2d 267, 271 (7th Cir.1984). The plaintiff testified to dizzy spells, numbness in his legs, insomnia, reduced tolerance to heat, humidity and cold, inability to walk more than several blocks, palpitations in his throat, and a pin-pricking sensation in his chest followed by general soreness. Additionally, the vocational expert testified that the plaintiff's work environment would have to be free of gasoline or diesel fumes. The ALJ discredited the foregoing, reasoning that the plaintiff's testimony concerning his inability to walk a certain distance contradicted remarks he had made to his physicians, that his complaints of chest pain contradicted the treadmill test results showing no pain during exercise, and that his symptoms seemed to be the product of anxiety.

■ While the question is a close one, I conclude the ALJ erred in applying the grid in this case, because there is not substantial evidence to support a conclusion that plaintiff's alleged nonexertional limitations do not prevent him from performing the full range of jobs within his exertional level. The ALJ properly exercised his prerogative in determining that plaintiff seemed "perfectly capable of extended standing and walking." However, there is nothing to contradict plaintiff's alleged inability to tolerate cold, heat, humidity and fumes except for Dr. Nichols's notes of October 12, 1982, wherein he states plaintiff told him he was aware that Dr. Nichols thought his symptoms were "mental." Given the fact that the "symptoms" referred to are not specified, and judging from the context, I do not think the doctor's notes provide substantial support for the proposition that plaintiff could withstand exposure to cold, heat, humidity or fumes without chest pain.

■ It does not follow that the Court must grant plaintiff's motion for summary reversal. A finding that the vocational guidelines are inapplicable to a claimant's case is not determinative of the merits of the case. 20 C.F.R. Part 404, Subpart P, Appendix 2, Rule 200.00(d), Smith v.

*Schweiker,* 735 F.2d at 272 n. 4. Rather, the matter must be remanded to the Secretary for further development of the record on the issue of the nature and severity of plaintiff's nonexertional impairments, and on the issue of the existence of work in the national economy for an individual with plaintiff's limitations.

THEREFORE, IT IS ORDERED that the plaintiff's and the defendant's motions for summary judgment are denied.

IT IS FURTHER ORDERED that this action is remanded to the defendant Secretary of Health and Human Services for further proceedings in accordance with this decision.