Joseph **CALDARULO,**
Plaintiff–Appellant,

v.

Otis R. **BOWEN, M.D., Secretary of Health and Human Services,**
Defendant–Appellee.

No. 87–2822.

United States Court of Appeals,
Seventh Circuit.

Argued April 11, 1988.

Decided Sept. 15, 1988.

As Corrected Sept. 29, 1988.

Robert C. Kielian, Chicago, Ill., for plaintiff-appellant.

Donald T. McDougall, Asst. Gen. Counsel, Dept. of Health and Human Services, Chicago, Ill., for defendant-appellee.

Before BAUER, Chief Judge, and CUMMINGS, and KANNE, Circuit Judges.

BAUER, Chief Judge.

Joseph Caldarulo brings this appeal seeking social security disability benefits under 42 U.S.C. § 423. The district court affirmed the decision of the Secretary of Health and Human Services (the Secretary) denying Caldarulo benefits because he failed to establish his eligibility under the Secretary's sequential evaluation procedures. 20 C.F.R. 404.1520(a)–(f). We affirm.

I.

It is uncontested that Caldarulo currently suffers from disabling arthritis in his back, legs, knee, and hands, sufficient to qualify for social security income (SSI). The controversy, however, centers upon whether the appellant was sufficiently disabled as of September 30, 1977, the last day he met the earnings requirements for

disability insurance, to receive additional social security disability insurance benefits.

Caldarulo first presented his claim on June 12, 1981, before Administrative Law Judge (ALJ) Doyle, who found that Caldarulo was not disabled as of September 30, 1977.[1] The Secretary adopted the ALJ's findings and Caldarulo did not seek further review. Caldarulo filed another application for disability insurance and submitted new evidence, including records of his 1975 hospitalization for ulcers; a letter dated February 24, 1983, from his orthopedist, Dr. Tansey, recounting plaintiff's condition since he first came under Tansey's care in 1979; x-rays from 1982 indicating herniated discs and arthritis in the spine; and a letter dated October 20, 1982, from Dr. Scupola, Caldarulo's treating physician in Italy during 1977, which stated that Caldarulo suffered from nerve root compression due to herniation of two discs. Dr. Scupola's letter stated that "[t]his symptomology had been already noted in March, 1977, for which I hospitalized him in my ward with the purpose of conservative treatment. The above-mentioned disc pathology, as the case anamnesis shows, was traced back to November 1976." In denying plaintiff benefits, ALJ Kaganiec reviewed both the new and old evidence, concluding that "no new evidence of [plaintiff's] symptomology is added to the record." The Secretary adopted the ALJ's decision as final and Caldarulo appealed.

In the district court's April 30, 1985 Opinion, Judge Grady reviewed both ALJ Doyle's and Kaganiec's decisions that Caldarulo's claim of disabling arthritis was not supported by medical evidence. *Caldarulo v. Heckler*, No. 83 C 4786, Memorandum Opinion at 6 (N.D.Ill. April 30, 1985) [available on WESTLAW, 1985 WL 1126]. The district court remanded the case to the Secretary to obtain a complete and accurate translation of Caldarulo's March, 1977 Italian medical records, and instructed the Secretary to reconsider the appellant's disability in light of those newly translated records. *Id.* at 8.

---

**1.** Where appropriate, we have adopted the district court's recitation of the facts throughout this opinion.

A third administrative hearing was convened on May 28, 1986, before ALJ Miller. The only "new" evidence ALJ Miller considered was the translated medical records. The ALJ noted that plaintiff had been hospitalized on March 14, 1977, and diagnosed as having lumbar arthrosis and arthrosis of the knees more severe on the right. The hospital records stated that "[t]he patient feels a bilateral irradiation under stress. At knee level it was found that the soft periarticular tissues are doughy with a marked bilateral pain in the internal collateral ligament especially on the right where articular spill over effects were found to be more pronounced." Blood and urine tests were taken. The ALJ mentioned that Caldarulo had testified x-rays were taken at that time, but none were included in the record. The hospital records further stated that, by March 20, 1977, the plaintiff's symptomology was in remission, although on March 25, 1977, when plaintiff discharged himself from the hospital, it was against medical advice.

ALJ Miller also reviewed Caldarulo's testimony at his two previous administrative hearings. Caldarulo had testified that, after he returned from Italy, he could not work in the restaurant he owned. He did not go to the restaurant for three months "because of [his] severe pains." He could not sit. He did no housework. He just watched TV "about eight hours a day." He was "really pooped ... having severe pains in the low part of my back ... I didn't have a bone in my body that didn't hurt." He testified that he would not have been able to lift 20 pounds or lift or carry objects weighing up to 10 pounds. He testified that in 1977 he could walk up and down only five steps and that he limped. He also testified that he took pills that relieved this pain somewhat. Caldarulo's daughter Grace also testified that her father did not work at the restaurant for three months after he returned from Italy and spent that time lying down in the house. He did not carry groceries and complained of pain in his back, legs, and knee. Plaintiff sold his restaurant in 1978 because of his ailments. When Caldarulo first applied for disability benefits, he was 51 years old and had attended school for 10 years.

The ALJ found that the translated medical records did not supply an objective basis to support a finding of disability. ALJ Miller wrote: "The only sustainable diagnosis was arthritis which left [Caldarulo] with the capacity to perform a full range of light work, and given the claimant's age and educational background and his ability to communicate in English, he was not disabled in 1977." The ALJ discounted the subjective evidence of disability—Caldarulo's testimony—stating that "the systemic nature of the claimant's alleged symptoms and his continually more colorful assertions cast some doubt on his credibility."

The Secretary, through the Appeals Council, modified the ALJ's decision finding that, although

[t]he [Secretary] does not dispute the fact that the claimant has had some degree of physical impairment since [March 1977] ... the claimant's problems responded to conservative treatment and were in remission at the time of discharge.

After reviewing the previous testimony and medical evidence, the Secretary found that in 1977 the "claimant would have been capable of a good deal of standing and walking, as well as lifting up to 20 pounds occasionally, within 12 months of his discharge from the hospital...." In applying the five-step analysis set forth at 20 C.F.R. 404.1520(a)–(f) to determine disability insurance eligibility, the Secretary found that Caldarulo could not perform the work he had done in the past, but that based on the Medical–Vocational Guidelines, 20 C.F.R. pt. 404, subpt. P, app. 2 ("the grid"), he had the residual functional capacity to perform "light work" and, therefore, was not disabled. The district court concluded that the Secretary's findings were supported by substantial evidence in the record and affirmed the denial of benefits.

## II.

Under the sequential evaluation procedures, once a claimant reaches step five by demonstrating that a severe impairment

has left him unable to perform past work, *Smith v. Schweiker*, 735 F.2d 267, 270 (7th Cir.1984), the Secretary must then show that the claimant retained the residual functional capacity to perform other work existing in the national economy. *Id.*

The Secretary may carry this burden through the use of its Medical–Vocational Guidelines, *see* 20 C.F.R. pt. 404, subpt. P, app. 2 (1983), which set out a grid of jobs in the national economy suitable for individuals of various physical capacity, age, education, and work experience. *Id.* Where a claimant's characteristics correspond to factors on the grid, the Guidelines determine disability based on the availability of suitable jobs for the claimant in the national economy. *Id.* The grid, however, is applicable only where it describes a claimant's abilities and limitations accurately. *Heckler v. Campbell*, 461 U.S. 458, 462 n. 5, 103 S.Ct. 1952, 1955 n. 5, 76 L.Ed.2d 66 (1983). The question for this court is whether substantial evidence in the record as a whole supports application of the guidelines to Caldarulo's claim. *See Strunk v. Heckler*, 732 F.2d 1357, 1359 (7th Cir.1984).

■ In denying Caldarulo benefits, the Secretary relied on Rules 202.17 and 202.-18, which direct a finding of "not disabled" for a "younger individual," unskilled, with a limited education. While it is undisputed that Caldarulo satisfies the age, skill, and education requirements of the Rules, he contests the conclusion that he retained the residual functional capacity to perform the full range of light work contemplated by the grid. "Light work," as defined by the Guidelines, involves

> lifting no more than 20 pounds at a time with frequent lifting or carrying objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing or pulling of arm or leg controls....

20 C.F.R. 404.1568(b). Caldarulo argues that his testimony, corroborated by his daughter's, that he was in severe pain and could neither sit nor stand nor lift ten to twenty pounds, establishes the existence of nonexertional impairments—namely chronic pain—which diminishes his ability to perform even the light work contemplated by the Guidelines, thus making their application inappropriate. *See Schweiker*, 735 F.2d at 271 ("Even if a claimant has the residual functional capacity to meet the exertional requirements for [light work], the regulations acknowledge that 'non-exertional' limitations—such as 'mental, sensory, or skin impairments' ...—may make application of the Guidelines improper."). Moreover, Caldarulo maintains that the Secretary must prove that his pain is not incapacitating to make use of the grids. *See Lewis v. Heckler*, 808 F.2d 1293 (8th Cir.1987).

We are compelled to reject Caldarulo's contentions. As did the district court, we believe that the Secretary is "permitted to conclude that a nonexertional limitation, while present, has no significant impact on a claimant's capacity to perform the range of work the individual is otherwise exertionally capable of performing," making application of the grid proper. *Schweiker*, 735 F.2d at 272 n. 3. We cannot conclude that the Secretary's decision lacks substantial evidence here.

While Caldarulo's 1977 Italian medical records indicate that his spine was "contracted" and "aching," no x-rays from the 1977 hospitalization establish an objective basis for evaluating the origin of his discomfort. As noted by the district court, in the absence of objective medical evidence establishing the origin of the claimant's pain, the Secretary has the discretion to evaluate subjective claims of discomfort. *Cook v. Heckler*, 750 F.2d 391, 395 (5th Cir.1985). ALJ Miller discounted Caldarulo's complaints stating, "the systemic nature of the claimant's alleged symptoms and his continually more colorful assertions cast some doubt on his credibility." Moreover, as both the Secretary and district court noted, the Italian medical records themselves indicate that Caldarulo's painful condition responded quickly to conservative treatment including painkillers, rest,

**414**

and therapy. Indeed, Caldarulo did not seek further medical treatment until more than two years after his return from Italy, and more than a year after the expiration of his disability insurance eligibility.

Given our limited review of these matters, we cannot conclude that the Secretary's application of the Medical–Vocational Guidelines was unsupported by substantial evidence in the record.

JUDGMENT AFFIRMED.