48 F.3d 1221
NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
 Linda HEREFORD, Plaintiff-Appellant,
v.
Donna E. SHALALA, Secretary of Health and Human Services,
Defendant-Appellee.
 No. 93-3299.
 United States Court of Appeals, Seventh Circuit.
 Submitted March 2, 1995.[1]
Decided March 7, 1995.
 
 Before POSNER, Chief Judge, and CUMMINGS and BAUER, Circuit Judges.
 
 ORDER
 
 1
 Linda Hereford appeals from a district court order affirming the Secretary's determination denying all supplemental security income and disability insurance benefits. Hereford's application for benefits alleged disability since June 1988, as the result of rheumatoid arthritis which primarily affects her right ankle, left wrist, hip, and the toes of her left foot. An ALJ found that Hereford was not entitled to benefits because she retained the residual functional capacity to perform the full range of sedentary work. The Appeals Council denied Hereford's request for review of the ALJ's decision. The district court granted the Secretary's motion to affirm.
 
 
 2
 Hereford contends on appeal to this court that the ALJ applied the wrong standard for pain; that substantial evidence does not support the ALJ's decision; that the ALJ should not have relied on the grids; that the evidence established that her rheumatoid arthritis meets listing 1.02; and that the ALJ discredited evidence without explanation.
 
 
 3
 For the reasons stated in the attached district court Memorandum and Order dated July 27, 1993, the judgment of the district court is AFFIRMED.
 
 ATTACHMENT
 UNITED STATES DISTRICT COURT
 EASTERN DISTRICT OF WISCONSIN
 
 4
 Linda F. Hereford, Plaintiff,
 
 
 5
 v.
 
 
 6
 Donna E. Shalala, Secretary of Health and Human Services, Defendant.
 
 Case No. 92-C-0713
 MEMORANDUM AND ORDER
 NATURE OF CASE
 
 7
 BITTNER, United States Magistrate Judge.
 
 
 8
 The plaintiff, Linda F. Hereford, commenced this action on July 15, 1992, seeking judicial review of the Secretary of Health and Human Services' (hereinafter referred to as Secretary) final decision denying her application for disability insurance benefits (hereinafter referred to as DIB) under the Social Security Act, 42 U.S.C. Sec. 405(g). The parties have consented to United States Magistrate Judge jurisdiction, pursuant to 28 U.S.C. Sec. 636(c) and Local Rule 13.05(a) (E.D.Wis.). The parties have filed cross motions for summary judgment.
 
 
 9
 This Court has amended the caption of the case by changing the name of the defendant from Louis W. Sullivan to Donna E. Shalala. Fed.R.Civ.P. 25(d)(1) provides that, when a public officer ceases to hold office, the action continues with the successor automatically substituted as a party. 42 U.S.C. Sec. 405(g) similarly provides that the action survives notwithstanding any change in the person occupying the office of the Secretary.
 
 PROCEDURAL HISTORY
 
 10
 On December 11, 1990 the plaintiff filed an application for DIB, alleging she became disabled on June 30, 1988 due to rheumatoid arthritis. The application was denied, both initially and upon reconsideration. Pursuant to the plaintiff's request, a hearing was held before an Administrative Law Judge (hereinafter referred to as ALJ) on December 9, 1991. The plaintiff, represented by counsel, appeared and testified as did her mother-in-law, Hazel Hereford.
 
 
 11
 On February 25, 1992 the ALJ issued a decision finding the plaintiff was not disabled, which became the final decision of the Secretary on June 19, 1992, when the Appeals Council denied the plaintiff's request for review. The plaintiff then commenced this action.
 
 
 12
 Previously, in February 1989, the plaintiff filed an application for DIB, alleging the same disability which serves as the basis for her current application for benefits. This prior application, which also alleges disability as of June 30, 1988, was denied initially and upon reconsideration and was apparently not pursued any further by the plaintiff.
 
 THE SECRETARY'S FINAL DECISION
 
 13
 In his February 25, 1992 decision the ALJ found the plaintiff suffers from severe rheumatoid arthritis, but her condition does not meet or equal the requirements of any impairment listed in App. 1, Subpart P, Regulations No. 4. Although the plaintiff was unable to perform her past relevant work as an automobile assembler, the ALJ went on to find she had the residual functional capacity to perform sedentary work. Therefore, based upon the plaintiff's age, education, residual functional capacity, and lack of transferable skills, the Medical-Vocational Guidelines (Rule 201.18), Table No. 1, App. 2, Subpart P, Regulations No. 4, directed a conclusion the plaintiff was not disabled, because she could perform a significant number of sedentary jobs within the national economy. Consequently, the ALJ found the plaintiff was "not disabled" through the date of his decision.
 
 CASE HISTORY
 
 14
 This 5'4", right-handed, 165 pound plaintiff, born October 13, 1953, was 38 years old at the time of the hearing. She has an eighth grade education and can read, write, and do arithmetic. The plaintiff's past relevant work was as an assembler at an automobile manufacturing plant, where she worked from April 1973 until her alleged disability onset date of June 30, 1988. Such work required constant standing, frequent bending, crouching, and kneeling. During the last week the plaintiff worked, she had such a difficult time walking that coworkers had to help her with her job.
 
 
 15
 The plaintiff testified she is disabled by rheumatoid arthritis which primarily affects her left wrist, right ankle, hip, and the toes on her left foot. The pain in the plaintiff's right ankle is sharp. However, it comes and goes. She also has sharp pain in her left wrist, which is always swollen and throbs at night. She has both dull and sharp pain in her hip when she does too much lifting or housework. Fairly recently she has had problems of arthritis in the middle of her back and painful left toes. During rheumatoid arthritis flare-ups, some of her joints swell, including her left ankle and both elbows and knees. The plaintiff testified that, although she did not believe she could return to her prior job, she might be able to work at an "easier job with no standing." However, she also stated she did not think she could work five (5) days a week because of her hand and wrist pain.
 
 
 16
 The plaintiff admitted her arthritis was in relatively good control until December 1990, when she experienced a flare-up spreading to almost all of her joints. Her current medical treatment includes cortisone shots in various joints (right elbow, both knees, ankle, and left wrist). She also has had fluid drained from both of her knees. She takes a gold-based medication and Ibuprofen to alleviate her pain, but no longer takes Prednisone. Her physician advised her to use a cane to minimize the weight on her ankle and to wear an air cast around her ankle. However, the cane causes too much pressure on her wrist and it is difficult to wear the air cast with certain shoes. She testified the arthritis in her wrist has gotten worse and had affected her left toes within the past eight (8) months, but was essentially unchanged in her other joints.
 
 
 17
 The plaintiff describes her day as starting slowly because she is stiff for the first couple of hours after she awakens. At about 11:00 or 12:00 a.m. she fixes a meal for her husband. She is able to drive a car, go grocery shopping, do the laundry, cook, and perform housework with minimal assistance. However, due to the inability to lift, she does not load or unload grocery bags or lift/carry heavy cooking utensils. She manages her housework by cleaning for an hour or two (2) and then resting for either a couple of hours or until the next day, depending on how she feels. On a "good" day she cleans for several hours and then rests. On a "bad" day she does not do any housework. After the onset of her arthritis, the plaintiff moved to a smaller, ranch-style home with laundry facilities on the first floor. The plaintiff's activities include going to the grocery store, shopping mall, church, and visiting close relatives. She usually sleeps approximately eight (8) hours at night and takes a one (1) hour nap each day.
 
 MEDICAL EVIDENCE
 
 18
 The medical evidence of record reveals a history of treatment for rheumatoid arthritis beginning in 1987, with relief being afforded by injections and medication administered by her treating physician, Dr. Timothy Manning, M.D. On June 20, 1988 Dr. Manning saw her for complaints of significant pain in her right ankle and foot for the preceding two (2) weeks. She complained of multiple aching joints and stated she was unable to work that day. When she was seen on July 5, 1988, he directed her not to work until further notice.
 
 
 19
 Pursuant to Dr. Manning's referral, Dr. J.T. Harrington, Jr., M.D., conducted a consultative examination of the plaintiff on July 14, 1988. At that time the plaintiff complained of intermittent soreness in her right elbow and indicated her major concern was right hip girdle and right lower extremity pain, radiating from the right buttocks to her right ankle; prolonged tenderness of her ankle; numbness and pain in the great toe; and discomfort under the right heel upon walking and standing. Examination disclosed no evidence of active synovitis (inflammation of fluid containing membranes) in the hands, wrists, elbows, or shoulders. Straight leg raising of the right leg at 60? caused radicular pain to a mild degree. Hip range of motion was normal. There was no synovitis, effusion (escape of fluid into the tissues), or instability of her knees. Although the right ankle was mildly swollen, it had a good range of motion. Her right calcaneal (heel) point was tender. She could not walk on her toes due to ankle pain and right ankle jerk was absent. She did not have any definite loss of strength in her legs or feet. X-rays of the ankles revealed almost complete loss of articular cartilage in the right ankle with soft tissue swelling and erosion of the head of the fibula (lateral and smaller of the two bones of the leg). X-rays of the plaintiff's hands and wrists showed mild erosion of the ulnar styloids of both wrists, but no other abnormalities. Dr. Harrington diagnosed the plaintiff's right lower extremity pain as being caused by: 1) rheumatoid arthritis which, in general, was well controlled, although there was evidence of persistent active synovitis in the ankle and erosion of that joint; 2) plantar fasciitis (inflammation of fibrous tissue) of the right heel, probably as the result of her favoring the ankle in walking; 3) symptoms and loss of ankle jerk compatible with lumbar radiculopathy (disease of the spinal nerve roots), which was only mildly symptomatic and was without definite leg weakness. Dr. Harrington advised the plaintiff to continue with the same treatment program and to use an ankle air splint. He injected her right ankle with Depo-Medrol and Xylocaine and recommended she replace her "standing job" with a "sitting job." Dr. Harrington indicated that, if the plaintiff's right ankle continued to be troublesome, a synovectomy (excision of a portion or all of the synovial membrane of the joint) and eventually perhaps an ankle fusion might be indicated.
 
 
 20
 Dr. Harrington examined the plaintiff again on August 26, 1988, at which time he noted the combination of continued rest, being off work, and the injection had reduced the swelling and eliminated the tenderness. She had only "very mild synovitis of the ankle with a full range of motion and normal gait" and was released to return to work with a recommendation "she be restricted as much as possible to sitting work." She was told to report to Dr. Manning for monthly laboratory monitoring and return to see Dr. Harrington in a year.
 
 
 21
 Dr. Manning's treatment notes reveal: no visits by the plaintiff between July 1988 and January 1989. On January 17, 1989 the plaintiff had good results from a knee injection administered earlier that month and her only real problem was with her knee; on March 15, 1989 the plaintiff complained of right ankle and foot pain and received an injection; by April 26, 1989 the injection had almost totally relieved the ankle pain; and on July 11, 1989 the plaintiff's joints were "better" and her ankle was "dramatically better."
 
 
 22
 In a March 27, 1989 report of contact by a representative of the Social Security Administration (hereinafter referred to as SSA), Dr. Manning stated the plaintiff had almost constant pain in multiple joints, with signs of migratory synovitis or inflammation of multiple large joints, such as her shoulder, elbow, and knee, but most severe in her right ankle. She continued to have an elevated sedimentation rate and a right ankle fusion was being considered.
 
 
 23
 On April 11, 1989 Dr. R.L. Chancey, M.D., examined the plaintiff at the request of the Secretary. He noted she was being maintained only on Auranofin (gold drug for management of adults with rheumatoid arthritis who have had insufficient therapeutic response to or who are intolerant of an adequate trial of full doses of one or more steroidal anti-inflammatory drugs), supplemented by short courses of Prednisone and steroid injections for treatment of arthritic flare-ups. The plaintiff reported feeling "as well as she has in several months" and her ankle had not been giving her very much trouble, since she received an injection about three and a half (3 1/2) weeks earlier. She complained only of difficulty with her right hip and ankle and left wrist. Examination revealed puffiness and mild tenderness of the right ankle and left wrist, but no redness, heat, effusion, or deformity was noted. There was mild discomfort on rotation of the right hip, pulsation was good in the feet, vibratory sense was normal, patella reflexes were hypoactive. It was noted she limped on the right side when she walked, due to her ankle problem. She was able to perform both gross and fine movements of her fingers and hands and grip strength was normal. Dr. Chancey reported the plaintiff's rheumatoid arthritis was currently under good control, with the exception of some evidence of continued activity in the right ankle and left wrist.
 
 
 24
 In August 1989 Dr. Harrington reported the plaintiff was generally taking no medication and was doing "well." He characterized her rheumatoid arthritis as having "minimal if any disease activity", with symptoms being localized to the ulnar styloids and right ankle; both of which had erosion from prior active arthritis. He did report permanent disability for prolonged standing at work due to right ankle problems. Comparison of x-rays of the plaintiff's hands and wrists showed them to be unchanged from the preceding year.
 
 
 25
 On November 28, 1989 the plaintiff reported to Dr. Manning that she had stopped all medications several months earlier because she was feeling so well. Her symptoms remained in remission, although there was some pain around the ulnar styloids and her right ankle.
 
 
 26
 On February 5, 1991 Dr. Gregory Medis, M.D., a board-certified pathologist, conducted a consultative examination of the plaintiff at the request of the Secretary. He found no evidence of swelling in any joints; full range of motion bilaterally in the ankles, knees, and wrists; normal gait and station; she was able to get on and off the examining table without any difficulty; grip strength was strong bilaterally; and she was able to manipulate coins in her hands without difficulty. He indicated the plaintiff's rheumatoid arthritis was inactive and controlled and she was asymptomatic and totally unimpaired at that time, although the plaintiff claimed she had received a steroid injection the preceding week for right wrist problems. Although Dr. Medis was unable to verify any physical disability at that time, he recommended she avoid hard and physically strenuous labor, since it could aggravate her condition.
 
 
 27
 Dr. Manning's treatment notes revealed that, in January 1991 the plaintiff received an injection of her right wrist for an arthritic flare-up, which apparently alleviated the pain; in May 1991 her right ankle was injected; and in June 1991 the plaintiff received an injection of her elbow joint for relief of pain and swelling in her right elbow. When she was next seen in August 1991 the plaintiff had pain, swelling, and heat in her left hand for which she also received an injection. Dr. Manning noted at various times he had injected her wrists, knees, ankles, and elbows always with good results. On September 24, 1991 he reported the plaintiff still had some pain in her wrist. He indicated she had "disabling" rheumatoid arthritis and noted a flare-up in the toes of her left foot.
 
 
 28
 Dr. S. Thomas McElvey's, M.D., report of a December 2, 1991 examination of the plaintiff revealed problems in the plaintiff's hands and ankles. In an arthritis questionnaire, Dr. McElvey reported the plaintiff had active rheumatoid arthritis in both feet, both ankles, her right knee, right shoulder, right elbow, both wrists, hands, and back. With the exception of the plaintiff's left wrist, he indicated she suffered from persistent joint pain, swelling, and tenderness involving such joints which were expected to last or had lasted twelve (12) months or more. He also reported the plaintiff had a positive serologic test for rheumatoid factor, elevated sedimentation rate, and characteristic histological changes in biopsy.
 
 
 29
 In a December 2, 1991 residual functional capacity questionnaire, Dr. McElvey opined that, during an eight (8) hour day, the plaintiff could: stand two (2) hours, walk fifteen (15) minutes, and sit three (3) hours at a time for a total of six (6) hours a day. He reported she could carry up to ten (10) pounds occasionally; she could use her right hand, but not her left hand, for simple grasping or fine manipulation; and could use her left foot for repetitive movement, but only could perform limited repetitive movement with her right foot. She could "occasionally" work above shoulder level and push and pull, but she never could squat, climb, crawl, or bend, twist, or turn at the waist.
 
 
 30
 Dr. Manning completed several "Attending Physician's Statement for Disability" forms. The most recent form dated September 5, 1990 indicates that, although the plaintiff was precluded from performing her "usual" work, she could work sitting down.
 
 APPLICABLE LAW
 
 31
 The procedure for determination of whether a claimant is disabled consists of a five (5) step test, which has been recently described as follows:
 
 
 32
 The Secretary must determine in sequence: (1) whether the claimant is currently employed; (2) whether he has a severe impairment; (3) whether his impairment meets or equals one listed by the Secretary; (4) whether the claimant can perform his past work; and (5) whether the claimant is capable of performing any work in the national economy. Garfield v. Schweiker, 732 F.2d 605, 607 n. 2 (7th Cir.1984). Once the claimant has satisfied steps one and two, he will automatically be found disabled if he suffers from a listed impairment. If the claimant does not have a listed impairment but cannot perform his past work, the burden shifts to the Secretary to show that the claimant can perform some other job. Rhoderick v. Heckler, 737 F.2d 714, 715 (7th Cir.1984).
 
 
 33
 Allen v. Sullivan, 977 F.2d 385, 387 (7th Cir.1992). The burden is on the plaintiff to come forward with medical and other evidence the Secretary may require in making the disability determination. 42 U.S.C. Sec. 423(d)(5); Rhoderick v. Heckler, 737 F.2d 714, 715 (7th Cir.1984). The Secretary must evaluate and resolve conflicts in the evidence, determine credibility, and decide the case accordingly. Imani v. Heckler, 797 F.2d 508, 512 (7th Cir.), cert. denied, 479 U.S. 988 (1986).
 
 
 34
 "The Social Security Act specifically provides that 'the findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive.' " Pugh v. Bowen, 870 F.2d 1271, 1274 (7th Cir.1989) (citing 42 U.S.C. Sec. 405(g); see also, Arbogast v. Bowen, 860 F.2d 1400, 1403 [7th Cir.1988]; Ray v. Bowen, 843 F.2d 998, 1001 [7th Cir.1988]; Walker v. Bowen, 834 F.2d 635, 639 [7th Cir.1987]; Burnett v. Bowen, 830 F.2d 731, 734 [7th Cir.1987]. In reviewing the decision of the Secretary, this Court is obligated to review all the evidence contained in the record and such review "must be more than an uncritical rubber stamp." Delgado v. Bowen, 782 F.2d 79, 82 (7th Cir.1986). The findings of the Secretary must be accepted if they are supported by substantial evidence; this Court may not decide the facts anew, reweigh the evidence, or substitute its own judgment for that of the Secretary. Richardson v. Perales, 402 U.S. 389, 401 (1971); Stuckey v. Sullivan, 881 F.2d at 506; Walker v. Bowen, 834 F.2d at 640; Delgado v. Bowen, 782 F.2d at 82. However, even if substantial evidence supports the Secretary's findings, this Court may reverse, if the ALJ committed an error of law. Pugh v. Bowen, 870 F.2d at 1274.
 
 
 35
 Substantial evidence has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. at 401; Schmoll v. Harris, 636 F.2d 1146, 1150 (7th Cir.1980). Both the evidence favoring the claimant, as well as the evidence favoring the claim's rejection, must be examined since review of the substantiality of the evidence takes into account whatever in the record fairly detracts from its weight. Bauzo v. Bowen, 803 F.2d 917, 923 (7th Cir.1986). Substantial evidence may be something less than the greater weight or preponderance of the evidence. Young v. Secretary of Health and Human Services, 957 F.2d 386, 389 (7th Cir.1992).
 
 
 36
 The claimant has the burden of proving the existence of a disability; however, once the claimant has demonstrated an impairment of sufficient severity to preclude the kind of work in which he was previously engaged, the burden shifts to the Secretary to prove that some other kind of "substantial gainful employment" exists, which the claimant is able to perform. Tom v. Heckler, 779 F.2d 1250, 1252-53 (7th Cir.1985).
 
 
 37
 To expedite the carrying of this burden, the Secretary has promulgated 20 C.F.R. Part 404, Subpart P, App. 2, the "Medical-Vocational Guidelines", commonly referred to as the "grid." The rules of the "grid" reflect the analysis of the various vocational factors (that is age, education, and work experience) in combination with the individual's residual functional capacity (his or her maximum sustained work capability for sedentary, light, medium, heavy, or very heavy work) in evaluating the individual's ability to engage in substantial gainful activity in other than his or her vocationally relevant past work. Where the findings of fact, made with respect to a particular individual's vocational factors and residual functional capacity coincide with all of the criteria of a particular rule, the rule directs a conclusion as to whether the individual is disabled. See Cummins v. Schweiker, 670 F.2d 81, 82 (7th Cir.1982). However, each of these findings of fact is subject to rebuttal and the individual may present evidence to refute said findings. Where any of the findings of fact do not coincide exactly with the corresponding criteria of a rule, the rule does not apply in that particular case and, accordingly, does not direct a conclusion of disabled or not disabled. Heckler v. Campbell, 461 U.S. 458, 462 n. 5 (1983); Smith v. Schweiker, 735 F.2d 267, 271 (7th Cir.1984). Nonetheless, the Secretary is permitted to conclude that a nonexertional limitation, while present, has no significant impact on a claimant's capacity to perform the range of work he is otherwise exertionally capable of performing making application of the grid. Caldarulo v. Bowen, 857 F.2d 410, 413 (7th Cir.1988) (citing Smith v. Schweiker, 735 F.2d 267, 270 [7th Cir.1984].
 
 ANALYSIS
 
 38
 Before this Court the plaintiff argues the Secretary's decision is not supported by substantial evidence, because the ALJ incorrectly found she did not meet or equal the Listing of Impairments, Sec. 1.02 for rheumatoid arthritis; the ALJ failed to assess her credibility; and her nonexertional impairments of pain and inability to use her left hand for simple grasping and fine manipulation precluded the ALJ from relying upon the Medical-Vocational Guidelines as a basis for finding her "not disabled."
 
 Listing of Impairments
 
 39
 The plaintiff contends the ALJ's finding that she does not meet or equal the Listing of Impairments for rheumatoid arthritis is not supported by substantial evidence. Section 1.02 consists of the "A" criteria which requires a history of persistent joint pain, swelling, and tenderness involving multiple major joints (the hip, knee, ankle, shoulder, elbow, or wrist and hand) with the signs of joint inflammation (swelling and tenderness) on current examination "despite prescribed therapy for at least three 3 months", resulting in significant restriction of function of the affected joints and clinical activity expected to last at least twelve (12) months. The "B" criteria, which also must be satisfied, requires corroboration of the diagnosis by either positive serologic tests, antinuclear antibodies, elevated sedimentation rate, or characteristic histological changes in biopsy. The plaintiff must satisfy all the criteria in the Listing. Sullivan v. Zebley, 493 U.S. 521, 730 (1990).
 
 
 40
 In this case, the ALJ found the plaintiff's impairment did not meet or equal the requirements of any impairment listed in the Listing of Impairments and, furthermore, specifically found she did not meet the requirements of the Listing of Impairments Sec. 1.02 because her symptoms never persisted for at least three (3) months, despite prescribed treatment (Tr. 16). This finding is supported by substantial evidence. The medical record documents that, although the plaintiff has periodic flare-ups of her rheumatoid arthritis, the joint pain and inflammation did not persist for the minimum three (3) months, despite prescribed therapy. In fact, this Court's review of the medical records discloses relief from periodic pain and swelling appears to have been achieved within intervals of less than two (2) months. The medical records, as well as the plaintiff's own testimony at the hearing, disclose that, despite the exacerbation of her arthritic condition in June 1988, it was essentially under control by August 1988 and remained under good control until December 1990. The medical record also clearly documents pain relief has been achieved with injections and that, at times, the plaintiff's condition has been well controlled without any medication. Thus, although Dr. McElvey's report documents clinical test results required under the "B" criteria, there is substantial evidence to support the ALJ's conclusion the plaintiff does not meet the Listing of Impairments Sec. 1.02, since she does not meet the specifications of the "A" criteria which also must be satisfied. Notably, in this case, two (2) nonexamining physicians designated by the Secretary filled out and signed Form SSA-831-U5 in accordance with normal procedures stating the plaintiff's condition was not equal to any listing (Tr. 118-19). This is proof that a physician designated by the Secretary considered the equivalency question and the ALJ may rely upon the physician's opinion to determine eligibility. See Pope v. Shalala, No. 92-1084, slip op. at 10 (7th Cir. July 2, 1993) (citing Scott v. Sullivan, 898 F.2d 519, 524 [7th Cir.1990]; Waite v. Bowen, 819 F.2d 1356, 1360 [7th Cir.1987]. Thus, the ALJ's finding that the plaintiff's impairment did not meet or equal the Listing of Impairments is supported by substantial evidence.
 
 Credibility Evaluation
 
 41
 Next the plaintiff complains the ALJ failed to assess her credibility. A credibility assessment, which is not patently wrong, must be upheld. See Kelley v. Sullivan, 890 F.2d 961, 965 (7th Cir.1989) (citing Anderson v. Bowen, 868 F.2d 921, 927 [7th Cir.1989]; Imani v. Heckler, 797 F.2d 508, 512 [7th Cir.], cert. denied, 479 U.S. 988 [1986]. However, as a condition precedent to such deference, the reviewing court must first be certain that a credibility determination was actually made. See Schroeter v. Sullivan, 977 F.2d 391, 394-95 (7th Cir.1992). Here, although the ALJ does not expressly use the word "credibility", it is apparent from his decision that he did make a credibility finding. The ALJ made an evaluation of the plaintiff's pain, pursuant to SSR 88-13, indicating that, from the consistent records of several doctors, her rheumatoid arthritis was under good control. For the most part she was only taking over-the-counter medications and did not need to take Prednisone (Tr. 16). He further noted she was able to cook, clean, and perform other activities with only a little help (Tr. 16). Finally, he observed at the hearing that she gestured a lot, opened and closed her hands, made fists, and did not appear to be suffering from any restrictions and movements of her joints. Such observations by an ALJ are "credibility determinations and are entitled to considerable weight." Kelley v. Sullivan, 890 F.2d at 964 (quoting Whitney v. Schweiker, 695 F.2d 784, 788 [7th Cir.1982].
 
 
 42
 Furthermore, the ALJ's credibility determination is supported by the evidence of record. Reports from Drs. Harrington, Manning, Chancey, and McElvey support a finding that the plaintiff's rheumatoid arthritis is not disabling. Dr. Harrington characterized her condition as well controlled, mild, under control, and doing well. Dr. Chancey also indicated the plaintiff's arthritis was under "good control." Both Drs. Harrington and Manning recommended the plaintiff do sedentary work. The specific work-related physical limitations set forth by Dr. McElvey are not inconsistent with an ability to perform sedentary work. The plaintiff herself testified she could do an "easier" job which did not require her to stand throughout the work day. To the extent Dr. Manning's reports could be construed as indicating the plaintiff could not perform sedentary work, a physician's opinion on the ultimate issue of disability is not dispositive. 20 C.F.R. Sec. 404.1527 (1992); Waite v. Bowen, 819 F.2d 1356, 1359 (7th Cir.1987) (ALJ is not bound by a doctor's conclusion that a claimant is disabled). In any event, Dr. Manning's statements are contradictory in that, in the same form report, he indicated the plaintiff was "disabled" from any occupation, yet she was able to perform restricted "possible sitting job" work (Tr. 153-54). Moreover, because Dr. Manning's objective medical findings do not support his opinion that the plaintiff was disabled, the ALJ was entitled to discount such an opinion. See Edwards v. Sullivan, 985 F.2d 334, 337 (7th Cir.1993). Thus, contrary to the plaintiff's contention, the ALJ made the requisite credibility determination which will not be reconsidered by this Court, since it finds "some support in the record." Edwards v. Sullivan, 985 F.2d at 338.
 
 Substantial Gainful Employment
 
 43
 The plaintiff argues the ALJ improperly relied upon the Medical-Vocational Guidelines to assess her ability to engage in substantial gainful activity, since her nonexertional limitations of pain, fatigue, and limitations of joint movement restrict the full range of employment opportunities to perform sedentary work, thus, precluding the use of the guidelines. In this case, the ALJ evaluated the plaintiff's complaints of pain, pursuant to SSR 88-13, and noted the records of several physicians consistently indicated the plaintiff's rheumatoid arthritis was, for the most part, under good control and her pain was controlled by over-the-counter medications and she had no need for Prednisone. The ALJ also took into account the plaintiff's daily activities, noting she is able to cook, clean, shop, and perform other activities with only a little help. Finally, the ALJ observed the plaintiff at the hearing and, from a functional standpoint, noted she did not appear to be suffering from any restrictions in joint movement, as evinced from her many gestures and the opening and closing her hands. The ALJ's credibility determination will not be disturbed unless patently wrong and his observations of the plaintiff at the hearing are an invaluable aspect of that credibility determination. Kelley v. Sullivan, 890 F.2d at 964. When these credibility findings are taken, together with Dr. McElvey's December 2, 1991 residual functional capacity assessment, indicating the plaintiff could stand for two (2) hours at a time, walk for fifteen (15) minutes at a time, sit for six (6) hours a day, and lift ten (10) pounds, they are probative of an ability to perform sedentary work which requires the claimant: 1) to sit, 2) do occasional lifting of objects weighing up to ten (10) pounds, and 3) occasionally walk or stand. See Kapusta v. Sullivan, 900 F.2d 94, 96 (7th Cir.1989). Having concluded the plaintiff's ability to perform sedentary work was not significantly diminished by her nonexertional complaints of pain, the ALJ could properly rely upon the Medical-Vocational Guidelines. "The disabling extent of a claimant's pain is a question of fact for the ALJ and, if pain is found not to interfere with the claimant's ability to work, then the grids may be used." Edwards v. Sullivan, 985 F.2d at 339 (quoting Kapusta v. Sullivan, 900 F.2d 97 [7th Cir.1989].
 
 
 44
 The plaintiff also argues a finding of "disabled" is required, because her vocational profile is analogous to that described in Example 1 of Section 201.00(h), App. 2, Subpart P, 20 C.F.R. Part 404. This argument is not persuasive. Firstly, a finding of disability is not mandated for claimants with vocational profiles analogous to that described in Example 1. See Abbott v. Sullivan, 905 F.2d 918, 927 (6th Cir.1990); see also Nelson v. Bowen, 855 F.2d 503, 507 n. 6 (7th Cir.1988) (regulations cited, while not mandating a finding of disability, do indicate such a finding is "appropriate"). Secondly, the plaintiff's vocational profile does not match Example 1. The individual described in Example 1 has a permanent injury of the right hand, limiting the individual to sedentary jobs which do not require bilateral manual dexterity. See Cummings v. Sullivan, 950 F.2d 492, 498 (7th Cir.1991) (noting use of the Medical-Vocational Guidelines without a vocational expert, in analyzing the availability of sedentary jobs to a plaintiff who is precluded from using her nondominant hand for repetitive motions, was a "close question", but upholding reliance upon the Medical-Vocational Guidelines).
 
 Summary
 
 45
 In sum, this Court concludes substantial evidence supports the ALJ's finding the plaintiff's severe rheumatoid arthritis did not meet or equal Section 1.02 of the Listing of Impairments. The ALJ also made the requisite credibility determination which is not patently wrong. Finally, there is substantial evidence to support the ALJ's conclusion that the plaintiff's nonexertional limitations did not preclude reliance upon the Medical-Vocational Guidelines, which directed a conclusion she was not disabled because she could perform a significant number of sedentary jobs within the national economy. Consequently, the Secretary's final decision of "not disabled" must be upheld.
 
 CONCLUSION
 
 46
 NOW THEREFORE, IT IS ORDERED that the plaintiff's motion for
 
 
 47
 summary judgment of reversal or remand be and
 
 
 48
 hereby is DENIED;
 
 
 49
 IT IS FURTHER ORDERED that the defendant's motion for
 
 
 50
 summary judgment of affirmance be and hereby is
 
 
 51
 GRANTED; and,
 
 
 52
 IT IS ALSO ORDERED that the Clerk of United States District
 
 
 53
 Court is directed to enter judgment accordingly.
 
 
 54
 Dated at Milwaukee, Wisconsin this 27th day of July, 1993.
 
 
 
 [1]
 After preliminary examination of the briefs, the court notified the parties that it had tentatively concluded that oral argument would not be helpful to the court in this case. The notice provided that any party might file a "Statement as to Need of Oral Argument." See Fed.R.App.P. 34(a); Cir.R. 34(f). No such statement having been filed, the appeal is submitted on the briefs and the record