**Daly E. CANDELARIO, Plaintiff**

v.

**COMMISSIONER OF SOCIAL SECURITY, Defendant.**

**Civil Action No. 07–1129 (DRD).**

United States District Court,
D. Puerto Rico.

March 30, 2008.

Ramon H. Rivera–Sanchez, San Juan, PR, for Plaintiff.

Ginette L. Milanes, United States Attorney's Office, San Juan, PR, for Defendant.

### OPINION AND ORDER
### OF DISMISSAL

DANIEL R. DOMINGUEZ, District Judge.

Pending before the Court is an appeal of a denial of disability benefits under the Social Security Act. Plaintiff is a claimant who filed an application for disability insurance benefits on February 2, 2002, alleging that she was disabled and had been so since August 20, 1999 [1], due to carpal tunnel syndrome, CD strain, cervical mus-

cle spasm, degenerative changes, lumbar myositis, depression and anxiety. Plaintiff was thirty-four (34) years old in August, 1999. She has three years of college education, does not know how to communicate in the English language, and has past work experience as a legal secretary which is a light, skilled work activity.

The Plaintiff's initial application for Social Security disability benefits was denied and the Administrative Law Judge (ALJ) held a hearing on July 21, 2004. The ALJ determined that

> [a]lthough the Claimant's non-exertional limitations may have not allowed her to perform the full range of light work, using Medical–Vocational Rules 202.16, 202.21 and 202.22 as a framework for decision-making, it can be concluded that there were a significant number of unskilled light jobs in the national economy that she could have performed prior to the expiration of the insurance coverage.

See Tr. 27–28. Furthermore, the ALJ found that the Claimant was not disabled as defined in the Social Security Act. Plaintiff filed a timely appeal with the Appeals Council, who on December 21, 2006, denied Plaintiff's request for review.

On February 15, 2007, Plaintiff filed a Complaint (Docket No. 1), appealing the denial of Social Security benefits under 42 U.S.C. § 405(g). Plaintiff's complaint is based on the facts that the ALJ did not base his final conclusion on substantial evidence and that the ALJ used improper standards and misapplied the law in order to find Plaintiff not disabled.

Defendant filed an Answer to the Complaint (Docket No. 5) on April 24, 2007. Defendant requests that the Court dismiss

---

**1.** The Court notes that at the Administrative Hearing, the Claimant changed the alleged onset date from August 20, 1999 to November 1, 2001. See Docket No. 8, pg. 2; see also Tr. at 18.

the complaint, with costs and disbursements, and enter judgement in accordance with section 205(g) of the Social Security Act, 42 U.S.C. 405(g), because the Commissioner's findings of fact are supported by substantial evidence and are conclusive.

On April 26, 2007, Defendant filed a *Memorandum of Law* (Docket No. 6), claiming that since there is substantial evidence in the record to support the Commissioner's decision, that Plaintiff was not entitled to disability benefits, consequently the Commissioner's decision should be affirmed.

Plaintiff filed her *Memorandum of Law* (Docket No. 8) on May 10, 2007. Plaintiff specifically alleges that the ALJ failed to consider the nature and extent of the limitations arising from her medical conditions, that the ALJ did not base the RFC on a medical assessment from a treating or evaluating physician, that the ALJ did not give proper weight to the treating physicians medical reports and dismissed their opinions without explaining why, and failed to provide proper weight to the testimony of the claimant.

On October 17, 2007, the Court referred this case to Magistrate Judge Justo Arenas for a Report and Recommendation (Docket No. 9). On January 11, 2007, Magistrate Judge Arenas submitted his *Report and Recommendation* (Docket No. 11), to the Court. Magistrate Judge Arenas reviewed the ALJ's findings to discern whether there was substantial evidence supporting the ALJ's decision to deny disability status. After reviewing the record, the Magistrate Judge determined that

> "[u]nder the limited rubric which this court implements in its deferential consideration of the finding of the Commissioner under the substantial evidence rule, [he] could not find that a fortiori the administrative law judge has violated such a rule."

*See* Docket No. 11, pg. 11 (*emphasis ours*). Therefore, the Magistrate Judge recommended that the final decision of the Commissioner be affirmed and that the instant case be dismissed.

On January 16, 2007, Plaintiff filed timely *Objections to the Magistrate–Judge's Report and Recommendation* (Docket No. 12). Plaintiff contends that the Magistrate Judge erred by failing to support the RFC with evidence, by making reference to conflicts in the medical evidence, by making reference to the fact that the ALJ took administrative notice of the existence of 2,500 unskilled, medium, light and sedentary occupations in the national economy for which 1,400 are light and 200 are sedentary, by making erroneous conclusions about the claimant's treatment, by requiring a more strict compliance for the standard of proving pain than the rules and regulations require, and by failing to consider the combined effect of the physical and mental impairments on Plaintiff's capacity to do work related activities in a sustained manner.

Consequently, on January 28, 2007, the Defendant filed a *Response in Support of the Magistrate Judge's Memorandum and Recommendation* (Docket No. 13). In short, the Defendant alleges that Plaintiff in her objection to the Magistrate Judge's Report and Recommendation fails to prove that either the ALJ or the Magistrate Judge's decisions were not based on substantial evidence supported by the record as whole.

For the reasons stated below, the Court **ACCEPTS, ADOPTS and INCORPORATES** by reference, the Magistrate's *Report and Recommendation* (Docket No. 11), to the instant Order. Consequently, the Commissioner's decision is here by **AFFIRMED**.

## II. Applicable Law

### A. Referring Dispositive Motions to a U.S. Magistrate Judges

The District Court may refer dispositive motions to a United States Magistrate Judge for a Report and Recommendation. 28 U.S.C. § 636(b)(1)(B); FED.R.CIV.P. 72(b); L.Civ.R. 72(b); See *Mathews v. Weber*, 423 U.S. 261, 96 S.Ct. 549, 46 L.Ed.2d 483 (1976). Of course, an adversely affected party may contest the Magistrate's Report and Recommendation by filing its objections within ten (10) days after being served a copy thereof. FED. R.CIV.P. 72(b); L.Civ.R. 72(d). Moreover, 28 U.S.C. § 636(b)(1), in pertinent part, provides that:

> Within ten days of being served with a copy, any party may serve and file written objections to such proposed findings and recommendations as provided by rules of the court. A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations make by the magistrate.

28 U.S.C. § 636(b)(1).

Any objections to the Magistrate Judge's order must be filed with the Clerk of Court within ten (10) days after being served with a copy [thereof]. 28 U.S.C. § 636(b)(1) (2005); L.Civ.R. 72(c).

■ Any written objections must specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the legal basis for such objections. L.Civ.R. 72(c). Failure to file objections within the specified time waives the right to appeal the District Court's order. *U.S. v. Valencia–Copete*, 792 F.2d 4, 6 (1st Cir.1986). Additionally, claims which are not preserved by such objections are precluded upon appeal. *Davet v. Maccarone*, 973 F.2d 22, 30–31 (1st Cir.1992). Thus, timely objections are required in order to challenge the findings of a magistrate's recommendation, as well as the magistrate's failure to make additional findings. *Henley Drilling Co. v. McGee*, 36 F.3d 143, 150–151 (1st Cir. 1994). Additionally, only objections to the magistrate's recommendation which are specified are preserved. *Lewry v. Town of Standish*, 984 F.2d 25, 27 (1st Cir.1993). Therefore, the objecting party is only entitled to a de novo review of the issues which are specifically raised by the objection. *See, e.g. U.S. v. Valencia*, 792 F.2d 4, 6 (1st Cir.1986); *See also Gioiosa v. U.S.*, 684 F.2d 176, 178 (1st Cir.1982). In the instant case, Plaintiff timely made specific objections to the Magistrate Judge's Report and Recommendation. We must therefore review de novo the portions of the Magistrate Judge's *Report and Recommendation* to which the Plaintiff has expressed objection.

### B. Social Security Claim

■ Under the Social Security Act, the factual findings of the presiding Administrative Law Judge (ALJ) are conclusive where they are supported by "substantial evidence." 42 U.S.C. § 405(g). This Court will uphold the ALJ's findings where "a reasonable mind, reviewing the evidence in the record as a whole, could accept it as adequate to support his conclusion." *Rodriguez v. Sec. of Health and Human Svcs.*, 647 F.2d 218, 222 (1st Cir. 1981). However, in reaching the disability determination, "[i]t is the responsibility of the [ALJ] to determine issues of credibility and to draw inferences from the record evidence." *See Irlanda Ortiz v. Secretary of Health and Human Servs.*, 955 F.2d 765, 769 (1st Cir.1991)(*emphasis ours*); *see also Richardson v. Perales*, 402 U.S.

389, 399, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971). The resolution of conflicts in the evidence and the determination of the ultimate question of disability is for the ALJ, not for the doctors or for the reviewing Courts. *See Richardson,* 402 U.S. at 399, 91 S.Ct. 1420 (When the Courts are presented with "the not uncommon situation of conflicting medical evidence .... [it is for] ... [t]he trier of fact[s] ... to solve ...".)(*emphasis ours* ); *see also Rodriguez v. Secretary of Health & Human Servs.,* 647 F.2d 218, 222 (1st Cir.1981)(Although the Court found that the "other medical evidence in the record conflicted with" one of the doctors conclusions, it stated that "the resolution of such conflicts in the evidence is for the [ALJ]." Therefore, the Court stated that the decision had to "affirm the Secretary's resolution, even if the record arguably could justify a different conclusion, so long as it is supported by substantial evidence.")(*emphasis ours* )(*citing Lizotte v. Secretary of Health and Human Services,* 654 F.2d 127, 128 (1st Cir.1981); *Alvarado v. Weinberger,* 511 F.2d 1046, 1049 (1st Cir.1975) (per curiam)).

A claimant of disability benefits under the Social Security Act bears the initial burden of proving his disability. *Reyes Robles v. Finch,* 409 F.2d 84 (1st Cir.1969). To meet this burden, the claimant must establish that he is incapable of engaging in "any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. 423(d)(1)(A). Furthermore, a person is to be considered disabled only if "his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind

of substantial gainful work which exists in the national economy." 42 U.S.C. 423(d)(2)(A).

■ A plaintiff presents a prima facie case where he shows that, by reason of his/her disability, he/she is incapable of returning to any former occupation. *Hernandez v. Weinberger,* 493 F.2d 1120, 1122 (1st Cir.1974). Once the plaintiff makes this initial showing, the burden shifts to the government, which must offer "evidence showing there is generally available employment of the kind for which [plaintiff] is fit and qualified." *Torres v. Celebrezze,* 349 F.2d 342 (1st Cir.1965). The government "is not obligated to demonstrate that the claimant would actually be hired but [the government] must show that there are specific jobs in the national economy which the claimant is capable of doing." *Hernandez,* 493 F.2d at 1122.

Procedurally, the evaluation of a disability claim is handled in a five-step sequential evaluation process, outlined in 20 C.F.R. § 404.1520. First, the claimant's current work activity is considered; if the claimant is engaged in any substantial gainful activity, he is not considered disabled for the Social Security purposes. 20 C.F.R. § 404.1520(a)(4)(i). At steps two and three, the severity of impairment is considered and, if the impairment is not severe enough or its duration is insufficient, claimant is not considered disabled. 20 C.F.R. § 404.1520(a)(4)(ii). The fourth step is that at which the residual capacity for performance of past work is considered. 20 C.F.R. § 404.1520(a)(4)(iv). If the claimant can still perform a type of work which he performed in the past, he is not disabled for Social Security purposes. 20 C.F.R. § 404.1520(a)(4)(iv). The final step is that at which the claimant's residual functional capacity, age, education and work experience is considered and a deci-

sion regarding the ability of claimant to adjust to other work is made. 20 C.F.R. § 404.1520(a)(4)(v).

Although the occupational "Grid" may be used by the Administrative Law Judge to make determinations regarding the disability status of many individuals under 20 C.F.R. § 404.1520(a)(4), "[w]here a claimant has non-exertional impairments in addition to exertional limits, the Grid may not accurately reflect the availability of jobs such a claimant could perform." *Heggarty v. Sullivan,* 947 F.2d 990, 996 (1st Cir.1991).

The matter has been clearly set forth and duly explained in *Ortiz v. Secretary of Health and Human Services,* 890 F.2d 520(1st Cir.1989).

> Nonexertional impairments are treated differently under the regulatory scheme. As noted above, under the final test in the five-stage sequential analysis, once a claimant has demonstrated a severe impairment that prohibits return to his previous employment, the Secretary has the burden of proving the existence of other jobs in the national economy that the claimant can perform. 20 C.F.R. § 404.1520(f) (1988). The Grid is designed to enable the Secretary to satisfy this burden in a "streamlined" fashion without resorting to "the live testimony of vocational experts." *Sherwin,* 685 F.2d at 4. Yet the Grid is "predicated on an individual's having an impairment which manifests itself by limitations in meeting the strength requirements of jobs . . . ." 20 C.F.R. Part 404, Subpart P, App. 2, § 200.00(e) (1988) (emphasis added). Accordingly, where a claimant has one or more non-strength limitations, "the Guidelines do not accurately reflect what jobs would or would not be available." *Gagnon v. Secretary of Health and Human Services,* 666 F.2d 662, 665 n. 6 (1st Cir.1981). In cases

where a nonexertional impairment "significantly affects claimant's ability to perform the full range of jobs" he is otherwise exertionally capable of performing, *Lugo,* 794 F.2d at 17, "the Secretary must carry his burden of proving the availability of jobs in the national economy by other means," *Gagnon,* 666 F.2d at 665 n. 6, typically through the use of a vocational expert. See, e.g., *Burkhart v. Bowen,* 856 F.2d 1335, 1340–41 (9th Cir.1988); *Burgos Lopez,* 747 F.2d at 42; *Sherwin,* 685 F.2d at 3. On the other hand, should a nonexertional limitation be found to impose no significant restriction on the range of work a claimant is exertionally able to perform, reliance on the Grid remains appropriate. See, e.g., *Caldarulo v. Bowen,* 857 F.2d 410, 413 (7th Cir.1988); *Rodriguez Pagan v. Secretary of Health and Human Services,* 819 F.2d 1, 3–4 (1st Cir.1987) (per curiam), cert. denied, 484 U.S. 1012, 108 S.Ct. 713, 98 L.Ed.2d 663 (1988); *Borrero Lebron v. Secretary of Health and Human Services,* 747 F.2d 818, 818–20 (1st Cir.1984) (per curiam).

Moreover, even where a nonexertional impairment is significant, the Grid may still be used as "a framework for consideration of how much the individual's work capability is further diminished . . . ." 20 C.F.R. Part 404, Subpart P, App. 2, § 200.00(e)(2) (1988). Whether, by so invoking the Grid as a "framework," the Secretary can satisfy his burden under step five without resorting to vocational evidence depends on how closely the claimant's characteristics and the Grid criteria overlap. As mentioned above, the Grid is meant to reflect the potential occupational base remaining to a claimant in light of his strength limitations. If a non-strength impairment, even though considered significant, has the effect only of reducing that occupa-

tional base marginally, the Grid remains highly relevant and can be relied on exclusively to yield a finding as to disability. Yet the more that occupational base is reduced by a nonexertional impairment, the less applicable are the factual predicates underlying the Grid rules, and the greater is the need for vocational evidence. See, e.g., *Sherwin,* 685 F.2d at 3; Social Security Ruling ("SSR"), 85–15, at 93 (CE 1985); SSR 83–14, at 205, 207 (CE 1983).

. . .

The Grid of course includes skill level as one of its criteria, looking at the level of skill involved in a claimant's "previous work experience" in order to gauge future work capacity. See 20 C.F.R. § 404.1565(a) (1988) (the kind of work an individual has "already been able to do shows the kind of work that [he] may be expected to do"). A finding that a mental impairment relegates a claimant to unskilled work provides another, equally valid means of making that prediction. Moreover, the Grid rules are directly premised on the availability of jobs at the unskilled level: the "table rules reflect the potential occupational base of unskilled jobs for individuals who have severe impairments which limit their exertional capacities. . . ." SSR 85–15, at 92 (emphasis added). In fact, the regulations take explicit administrative notice of the existence of "[a]pproximately 1600 separate sedentary and light unskilled occupations . . . in eight broad occupational categories, each occupation representing numerous jobs in the national economy." 20 C.F.R. Part 404, Subpart P, App. 2, § 202.00(a) (1988) (emphasis added). Consequently, so long as a nonexertional impairment is justifiably found to be substantially consistent with the performance of the full range of unskilled work, the Grid retains

its relevance and the need for vocational testimony is obviated.

In the case of mental impairments, this inquiry actually entails two separate determinations: (1) whether a claimant can perform close to the full range of unskilled work, and (2) whether he can conform to the demands of a work setting, regardless of the skill level involved. As to the former, the Secretary has outlined the mental capabilities required for unskilled work as follows:

The basic mental demands of competitive remunerative unskilled work include the abilities (on a sustained basis) to understand, carry out, and remember simple instructions; to respond appropriately to supervision, coworkers, and usual work situations; and to deal with changes in a routine work setting. A substantial loss of ability to meet any of these basic work-related activities would severely limit the potential occupational base.

*See Ortiz,* 890 F.2d at 524–526.

### III. Analysis

After reviewing de novo the portions of the Magistrate Judge's *Report and Recommendation* to which the Plaintiff has expressed objection, the Court agrees in *toto,* with the recommendation made by Magistrate Judge. Therefore, the Court **ACCEPTS, ADOPTS and INCORPORATES** by reference, the Magistrate's *Report and Recommendation* (Docket No. 11), to the instant Order. The Court finds that after taking into consideration all of Plaintiff's objections, the Court has reached the same conclusions as the ones reached by the Magistrate Judge in his *Report and Recommendation.* Consequently, the Commissioner's decision is here by **AFFIRMED.** The Court briefly explains.

The Court agrees with the Magistrate's determination that the findings of non-examining physicians, the lack of sustained neurological treatment reflecting a disability condition, and the ALJ's observation of Plaintiff at the hearing, support the ALJ's final decision.

■ Furthermore, the Court agrees with the Magistrate's finding that when a non-exertional limitation is found to impose no significant restriction on the range of work Plaintiff is exertionally able to perform, the ALJ's reliance on medical-vocational guidelines is appropriate. *See Ortiz*, 890 F.2d at 524–526 ("... should a nonexertional limitation be found to impose no significant restriction on the range of work a claimant is exertionally able to perform, reliance on the Grid remains appropriate.")(*citing Caldarulo v. Bowen*, 857 F.2d 410, 413 (7th Cir.1988); *Rodriguez Pagan v. Secretary of Health and Human Services*, 819 F.2d 1, 3–4 (1st Cir. 1987) (per curiam), cert. denied, 484 U.S. 1012, 108 S.Ct. 713, 98 L.Ed.2d 663 (1988); *Borrero Lebron v. Secretary of Health and Human Services*, 747 F.2d 818, 818–20 (1st Cir.1984) (per curiam)). In the instant case, the Court finds that since there is substantial evidence in the record to support the ALJ's conclusion that Plaintiff's capacity for a full range of light work has not been significantly compromised by her non-exertional limitations, then the ALJ's reliance on the medical-vocational guidelines was appropriate.

■ Moreover, the Court agrees with the Magistrate's finding that the ALJ, making reference to the treating sources, did not attribute the treating sources findings and diagnoses controlling weight since said findings and diagnoses do not support the conclusion that the Plaintiff has had such a persistent and completely restricted residual functional capacity that would meet the severity and duration require-

ments of the Act. What is more, the fact that the ALJ allegedly failed to base the RFC on a medical assessment from a treating or evaluating physician, is of no consequence since, "treating physicians 'are not entitled to greater weight merely because they are treating physicians' as compared with a consulting physician's opinion." See *Vega–Morales v. Commissioner of Social Security*, 380 F.Supp.2d 54, 59 (D.P.R.2005)(*citing Rodriguez Pagan v. Secretary of Health and Human Services*, 819 F.2d 1, 3 (1st Cir.1987)). Furthermore, the ALJ's resolution must be affirmed "even if the record arguably could justify a different conclusion, so long as it is supported by substantial evidence", as is the ALJ's conclusion in the instant case. *See Rodriguez Pagan*, 819 F.2d at 3; *see also Irlanda Ortiz*, 955 F.2d at 770 ("Although the record arguably could support a different conclusion, we believe there is substantial evidence to support the Secretary's decision that claimant's capacity for the full range of such work was not significantly reduced. Thus, we must uphold his decision.")(*citing Rodriguez Pagan*, 819 F.2d at 3). In addition, the Court deems necessary to state that "[t]he resolution of conflict in the evidence and the ultimate determination of disability are for the ALJ, not the Courts." *See Guasp Goden v. Commissioner of Social Security*, 385 F.Supp.2d 154, 156 (D.P.R.2005)(*citing Rodriguez*, 647 F.2d at 222). Hence, the Court must apply the standard that when presented with "the not uncommon situation of conflicting medical evidence .... [it is for t]he trier of fact[s] ... to solve ...". *See Richardson*, 402 U.S. at 399, 91 S.Ct. 1420 (emphasis ours).

The Court further agrees with the Magistrate Judge's finding that the ALJ correctly noted that the clinical examinations in the record, do not reveal such significant medical abnormalities or corrobora-

tive medical findings that could justify Plaintiff's allegations of a continuous disabling physical or emotional distress. Moreover, the Court agrees with the Magistrate's finding that as the ALJ had noted, Plaintiff's testimony reflected that her level of activity was not inconsistent with a finding that she could perform light work. In addition, the Magistrate noted that the ALJ had found that while Plaintiff's impairments produced pain, her allegations as to intensity, persistence, and limiting effects were not entirely credible. Although the Court finds that the ALJ's findings are supported by the record, the Court deems imperative to state that the determination of issues of credibility and the drawing of inferences from the evidence of record, is not for the doctors or **for the reviewing Courts, but for the ALJ.** *See Irlanda Ortiz,* 955 F.2d at 769 (The Circuit Court found that although there was an "objective medical impairment-a ruptured disc at L5–S1–that [could] reasonably be expected to produce pain. [the Court] believe[d] the ALJ did not err in deciding that claimant's complaints were not credible to the extent alleged."); *see also Lizotte,* 654 F.2d at 128; *Alvarado,* 511 F.2d at 1049.

Regarding whether or not the ALJ used the correct standard when assessing Plaintiff's non-exertional limitations, the Court agrees with the Magistrate's conclusion that the ALJ did use the correct standard under SSR 96–7p and circuit case law. Furthermore, the Court agrees with the Magistrate's finding that although the ALJ did not quote the particular outline, she did address the required outline factors within the supporting rationale for her findings. See Docket No. 11, pg. 10.

■ Finally, the Court agrees with the Magistrate's conclusion that not only is the ALJ's final decision, that Plaintiff is not under a disability and is able to perform the full range of light work, supported by substantial evidence in the record, but that the ALJ's final decision reflects a reasonable balancing and weighing of evidence and credibility determination.

Among the choices the administrative law judge had in reaching her determination, the findings of non-examining physicians, and the lack of sustained neurological treatment reflecting a disabling condition support the final decision, including the administrative law judge's observation of plaintiff at the hearing. She noted that her daily activities are consistent with the ability to perform light work. Intensive medical treatment for her conditions was not required. She did not appear in significant physical or mental distress, moved freely, provided information accurately and related adequately. (Tr. at 25, 417–48.) There was no acute treatment for pain, and no significant information reflecting plaintiff is unable to function socially.

*See* Docket No. 11, pg. 10.

■ Furthermore, the Court joins in the opinion of brethren District Judge Garcia Gregory, "that '[w]hen a treating doctor's opinion is inconsistent with other substantial evidence in the record, the requirement of 'controlling weight' does not apply.'" *See Berrios–Velez v. Barnhart,* 402 F.Supp.2d 386, 391 (D.P.R.2005)(*quoting Shaw v. Sec'y of Health and Human Services,* 25 F.3d 1037, No. 93–2173, 1994 WL 251000, at *3 (1st Cir.1994)(table decision)); *see also Schaal v. Apfel,* 134 F.3d 496, 503 (2nd Cir.1998)(Standing for the proposition that after the 1991 SSA Regulations, the ALJ is authorized not to provide controlling weight to treating physicians' opinions if valid records are provided on the record).

### IV. Conclusion

Therefore, after reviewing *de novo* the portions of the Magistrate Judge's *Report and Recommendation* to which the Plaintiff has expressed objection, the Court agrees *in toto,* with the recommendation made by Magistrate Judge. Consequently, the Court **ACCEPTS, ADOPTS and INCORPORATES** by reference, the Magistrate's *Report and Recommendation* (Docket No. 11), to the instant Order. Hence, the Commissioner's decision is hereby **AFFIRMED.** This case is CLOSED. Judgment shall be entered accordingly.

**IT IS SO ORDERED.**